# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-01786-SCT

*A. JENNINGS COX, JR.*

*v.*

*MARGARET LOUISE (PEGGY) COX*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/29/2006 |
| TRIAL JUDGE: | HON. KENNETH M. BURNS |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOSEPH N. STUDDARD |
| ATTORNEY FOR APPELLEE: | GARY L. GEESLIN |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 02/28/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., DICKINSON AND LAMAR, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This is a dispute between siblings over an inter vivos transfer of property by a mother

to a daughter.  Finding that the Chancery Court of Lowndes County did not abuse its

discretion in dismissing the son's case for failure to prosecute, we affirm.

## FACTS

¶2.     On August 4, 1992, Louise R. Cox executed a Warranty Deed which transferred

approximately 281 acres in Lowndes County, Mississippi, to her daughter Margaret Louise

(Peggy) Cox.  Peggy employed attorney Shields Sims to prepare the necessary legal

documents to convey the 281 acres and accompanied Louise, an 88-year-old widow at the

time, to Sims's law office to execute the deed. Prior to the execution of the deed, the 281 acres were to pass under Louise's will to her children, Peggy and A. Jennings Cox, Jr., in equal shares.[1]

¶3. On November 5, 1992, Jennings filed, on Louise's behalf, a lis pendens notice and complaint against Peggy to set aside the deed.[2] The complaint alleged that Peggy had used false representations and exerted undue influence upon Louise to execute the deed.[3] In an affidavit attached to the complaint, Louise stated that the conveyance had been a mistake and that she had not intended to disrupt the testamentary disposition of the 281 acres. However, just one month later, on December 3, 1992, Louise filed a letter in the chancery court which stated that Jennings's attorney, J. Joshua Stevens, Jr., never had her consent to file the complaint against Peggy and requested that the suit be dropped.

¶4. On August 23, 1993, Louise's deposition was taken by Shields Sims, as attorney for Peggy, primarily for the purpose of establishing that Louise did not consent to be a named plaintiff in the complaint filed by Jennings. Louise gave inconsistent statements and

---

[1] Under Louise's will, Peggy was to receive Louise's home and all the contents thereof. The rest and residue of Louise's estate, both real and personal property, were to go to Peggy and Jennings in equal shares. Prior to Louise's will dated January 21, 1976, both Peggy and Jennings had received inter vivos transfers of property from their parents. Peggy received 237.5 acres in a deed dated November 13, 1970. Jennings received about 400 acres of farmland in a deed dated November 13, 1970, another 70 acres in a deed dated November 13, 1970, and approximately 240 acres in a deed dated August 31, 1973.

[2] Although the complaint was brought in the name of Louise R. Cox, neither party contests that the action was filed by Jennings on his mother's behalf.

[3] Jennings would later file an amended complaint and a second amended complaint, among other pleadings, the discussion of which is not necessary for consideration of this appeal.

2

exhibited signs of confusion throughout her deposition.[4] Louise stated that she never intended to sue anyone and that she did not want Peggy to deed the 281 acres back to her. But later on, she said that at the time she went to the office of attorney J. Joshua Stevens, Jr., she "thought it was best" to put the deed dispute before a judge. Louise was dismissed as a party by order dated June 22, 1994.

¶5.     On November 27, 1996, Peggy filed a motion for protection to prevent Jennings from further deposing her. No further action occurred on the suit until December 17, 2003, when two orders were entered, one assigning the case to Chancellor Kenneth M. Burns and one substituting attorney Gary L. Geeslin as Peggy's counsel.

¶6.     Jennings filed nothing on his claim from November 25, 1996, when he filed his Amended Notice of Deposition, until June 3, 2005, when he served Peggy with interrogatories and requests for production of documents.[5] After initially attempting to quash Jennings's interrogatories and requests for production, Peggy filed a motion to dismiss for failure to prosecute on October 5, 2005.[6]

---

[4] At one point, Louise stated that she had three children, one of whom was named Walter. Yet, Peggy and Jennings were Louise's only two children. Additionally, Louise stated that she had been to the camp house located on the 281 acres with her husband in the prior year. However, Louise's husband had died years earlier.

[5] In his Motion for Reconsideration, for a New Trial, or for Findings of Fact and Conclusions of Law, Jennings attached correspondence dated from February 23, 2001, to November 22, 2002, which documented apparent settlement negotiations during some periods of the dormancy. However, the chancellor refused to consider this "voluminous correspondence," because it could not be considered newly discovered evidence.

[6] Almost seven years and one month passed from the time Peggy filed her Motion for Protection on November 27, 1996, until the two orders were entered on December 17, 2003. Approximately eight years and six months passed from November 27, 1996, until Jennings served Peggy with interrogatories and requests for production of documents on June 3, 2005.

3

¶7.    On January 25, 2006, the chancellor entered an order denying Peggy's motion to dismiss, but reserved the right to dismiss the case later, depending on the proof. In overruling Peggy's motion to dismiss, the chancellor noted that the clerk had not moved to dismiss the action pursuant to Rule 41(d)[7] of the Mississippi Rules of Civil Procedure and, therefore, the first notice that Jennings had of a possible dismissal came from Peggy. The chancellor also found that most of the delay in bringing the case to trial was not Jennings's fault, but that of others. Notwithstanding these findings, the chancellor stated that he "reserves the right to later dismiss the case if the delay is prejudicial to [Peggy] and also reserves the right to impose sanctions if the Court deems appropriate."

¶8.    A trial was held on July 24-25, 2006. At the conclusion of Jennings's case-in-chief, Peggy renewed her motion to dismiss based on Jennings's failure to prosecute and failure to show a right to relief. The chancellor issued a bench opinion in which he granted Peggy's motion to dismiss on the grounds of failure to prosecute. The chancellor cited the extensive delay and found that such delay had prejudiced Peggy due to the unavailability of Louise,

---

[7] Rule 41(d)(1) of the Mississippi Rules of Civil Procedure provides in pertinent part:

> In all civil actions wherein there has been no action of record during the preceding twelve months, the clerk of the court shall mail notice to the attorneys of record that such case will be dismissed by the court for want of prosecution unless within thirty days following said mailing, action of record is taken or an application in writing is made to the court and good cause shown why it should be continued as a pending case. If action of record is not taken or good cause is not shown, the court shall dismiss each such case without prejudice.

Miss. R. Civ. P. 41(d)(1).

4

physicians who could have examined Louise before trial, and former family attorney Robin Weaver.[8] The chancellor entered a Final Judgment on August 1, 2006, dismissing Jennings's Second Amended Complaint with prejudice.

¶9. Jennings filed a motion for reconsideration, for a new trial or for findings of fact and conclusions of law, which the chancellor denied on September 15, 2006. Jennings then filed a timely notice of appeal with this Court.

¶10. Jennings raises two issues on appeal: (I) whether the chancellor abused his discretion by dismissing Jennings's claim for failure to prosecute pursuant to Mississippi Rule of Civil Procedure 41(b); and (II) whether the chancellor erred in failing to "find the facts specially and state separately [his] conclusions of law thereon" as requested by Jennings.

## STANDARD OF REVIEW

¶11. In reviewing a trial court's dismissal for failure to prosecute pursuant to Rule 41(b), this Court will reverse only if it finds the trial court abused its discretion. *AT&T v. Days Inn of Winona*, 720 So. 2d 178, 180 (Miss. 1998) (citing *Wallace v. Jones*, 572 So. 2d 371, 375 (Miss. 1986)).

¶12. This Court reviews a lower court's decision not to make specific findings of fact and conclusions of law on an abuse-of-discretion standard. *See Tricon Metals & Services, Inc. v. Topp*, 516 So. 2d 236, 239 (Miss. 1987).

## DISCUSSION

---

[8] Attorney Robin Weaver had prepared Louise's Last Will and Testament, and had prepared deeds for certain inter vivos transfers of property to both children during the lifetime of Louise's husband, A. J. Cox, Sr.

5

**I.** **Whether the chancellor abused his discretion by dismissing Jennings's claim for failure to prosecute pursuant to Mississippi Rule of Civil Procedure 41(b).**

¶13. Rule 41(b) of the Mississippi Rules of Civil Procedure authorizes a defendant to move for the dismissal of an action "[f]or failure of the plaintiff to prosecute . . . ." Miss. R. Civ. P. 41(b). The power to dismiss for failure to prosecute is granted not only by Rule 41(b), but is part of a trial court's inherent authority and is necessary for "the orderly expedition of justice and the court's control of its own docket." *AT&T*, 720 So. 2d at 180 (quoting *Wallace*, 572 So. 2d at 375; *Watson v. Lillard*, 493 So. 2d 1277, 1278 (Miss. 1986)).

¶14. What constitutes failure to prosecute is considered on a case-by-case basis. *AT&T*, 720 So. 2d at 181 (citing *Wallace*, 572 So. 2d at 376). In *AT&T*, this Court set forth considerations to be weighed in determining whether to affirm a dismissal with prejudice under Rule 41(b): (1) whether there was a "a clear record of delay or contumacious conduct by the plaintiff"; (2) whether lesser sanctions may have better served the interests of justice; and (3) the existence of other "aggravating factors." *AT&T*, 720 So. 2d at 181 (citing *Rogers v. Kroger Co.*, 669 F.2d 317, 320 (5th Cir. 1982)).

**A.** **Clear record of delay or contumacious conduct by the plaintiff.**

¶15. In dismissing Jennings's claim, the chancellor stated that the case had been on file for nearly fourteen years and that there had been "some prejudice" to Peggy as a result of the delay. Jennings argues that the chancellor relied primarily on the passage of time and that factors other than delay *must* be present to warrant dismissal under Rule 41(b).

¶16. Cases from both this Court and the Court of Appeals indicate that factors other than delay typically are present when a dismissal with prejudice under Rule 41(b) is upheld. *See*

6

*Hoffman v. Paracelsus Health Care Corp.*, 752 So. 2d 1030, 1034-35 (Miss. 1999) (dismissal improper); *AT&T*, 720 So. 2d at 181-82 (dismissal improper); *Watson*, 493 So. 2d at 1279-80 (dismissal affirmed); *Tolliver ex rel. Wrongful Death Beneficiaries of Green*, 2007 Miss. App. LEXIS 467, 20-23 (Miss. Ct. App. July, 17 2007) (dismissal affirmed); *Hensarling v. Holly*, 2007 Miss. App. LEXIS 396, 7-11 (Miss. Ct. App. June 5, 2007) (dismissal affirmed); *Hine v. Anchor Lake Prop. Owners Ass'n*, 911 So. 2d 1001, 1004-07 (Miss. Ct. App. 2005) (dismissal affirmed); *Camacho v. Chandeleur Homes, Inc.*, 862 So. 2d 540, 543-44 (Miss. Ct. App. 2003) (dismissal improper); *Lone Star Casino Corp. v. Full House Resorts, Inc.*, 796 So. 2d 1031, 1032-33 (Miss. Ct. App. 2001) (dismissal improper).

¶17.     Nevertheless, factors other than delay are not required.  The standard is whether there is "a clear record of delay *or* contumacious conduct by the plaintiff. . . ."  *AT&T*, 720 So. 2d at 181 (emphasis added); *see also* *Hine*, 911 So. 2d at 1005 (where a clear record of delay has been shown, there is no need for a showing of contumacious conduct).  "Aggravating factors" serve to "bolster" the case for dismissal, but are not required.  *AT&T*, 720 So. 2d at 181 (citing *Rogers*, 669 F.2d at 320).

¶18.     Even though delay alone may suffice, the chancellor relied both on the passage of time and his finding of prejudice in dismissing Jennings's claim.  The chancellor had specifically reserved the right to dismiss the case if prejudice were found.  It was the chancellor's later finding of prejudice—not the passage of time alone—that tipped the balance in favor of dismissal.

¶19.    Jennings further argues that he has not been guilty of any "delay or contumacious conduct," but consistently has pursued his claim. Jennings points out that he has been through four attorneys as part of his effort to advance the case.[9]

¶20.    Efforts to secure substitute counsel may constitute excusable delay. *Cf. Watson*, 493 So. 2d at 1279 (lack of counsel not permissible delay where plaintiff materially contributed to the delay); *see also Morris v. Ocean Systems, Inc.*, 730 F.2d 248, 249, 253 (5th Cir. 1984) (delay of eight months included efforts to secure substitute counsel); *Camacho*, 862 So. 2d at 544 (delay of five months in acquiring counsel); *Lone Star Casino Corp.*, 796 So. 2d at 1033 (delay of twenty months in acquiring counsel). However, the delay in this case is significant—approximately seven years and one month in which no activity occurred on the docket and almost nine years in which Jennings took no action on the case.

¶21.    Jennings asserts that settlement discussions were ongoing between the parties during the dormancy period. Settlement efforts also may constitute excusable delay. *See Morris*, 730 F.2d at 252-53; *see also GCIU Employer Retirement Fund v. Chicago Tribune Co.*, 8 F.3d 1195, 1200 (7th Cir. 1993); *EEOC v. Firestone Tire & Rubber Co.*, 626 F. Supp. 90, 94 (M.D. Ga. 1985); *but see Rovner v. Warner Bros. Pictures, Inc.*, 29 F.R.D. 488, 490 (E. D. Penn. 1962) ("active prosecution of a case can be expected to leave footprints on the docket."). However, "the pendency of negotiations is not an excuse where the delay is

---

[9] Jennings testified that his attorney J. Joshua Stevens, Jr., had been too busy and that H. Lee Morrison, Jr., began to work on the case. Jennings stated that after Morrison's death, he secured the counsel of Thomas L. Kesler, who eventually had to withdraw. Whether Morrison's death was the actual cause of Jennings obtaining new counsel is disputed. Jennings then approached Joseph N. Studdard in June of 2004 and obtained his services.

8

unreasonably long . . . or if it continues after it is apparent that the negotiations would not be fruitful." *GCIU Employer Ret. Fund*, 8 F.3d at 1200 (citing *Firestone Tire & Rubber Co.*, 626 F. Supp. at 94).

¶22.   Even assuming that informal settlement discussions took place during the significant period of inactivity, Jennings should have abandoned settlement efforts and pursued litigation on his claim when it became apparent that negotiations were unyielding.

**B.     Lesser sanctions**.

¶23.   Jennings argues that the chancellor failed to consider lesser sanctions and that Peggy failed to propose such lesser sanctions to the chancellor.

¶24.   This Court must consider whether lesser sanctions would better serve the interests of justice. *AT&T*, 720 So. 2d at 181. Lesser sanctions include "'fines, costs, or damages against plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings.'" *Id*. at 181-82 (quoting *Wallace*, 572 So. 2d at 377). This Court is less likely to uphold a Rule 41(b) dismissal "[w]here there is no indication in the record that the lower court considered any alternative sanctions . . . ." *AT&T*, 720 So. 2d at 181 (citing, *e.g.*, *Rogers*, 669 F.2d at 321-22).

¶25.   The fact that lesser sanctions were argued before the chancellor, that the chancellor considered all arguments prior to granting dismissal, and that the chancellor denied Jennings's motion for reconsideration, in which Jennings argued that lesser sanctions had not been

9

considered, is sufficient to show that lesser sanctions were considered and rejected.[10] *See Hine*, 911 So. 2d at 1005.

¶26.   We also find that lesser sanctions would not suffice under these circumstances because lesser sanctions could not cure the prejudice to Peggy caused by the delay.

### C.   Aggravating factors.

¶27.   Jennings contends that no aggravating factors are present in this case.  "Aggravating factors" include "the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, the degree of actual prejudice to the defendant, and whether the delay was the result of intentional conduct." *AT&T*, 720 So. 2d at 181 (quoting *Rogers*, 669 F.2d at 320).  While "aggravating factors" are not required, the presence of such factors strengthens the case for dismissal under Rule 41(b). *AT&T*, 720 So. 2d at 181 (citing *Rogers*, 669 F.2d at 320); *see* *Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 418 (5th Cir. 2006).

---

[10]   Citing the Court of Appeals' decision in *Hensarling v. Holly*, 2007 Miss. App. LEXIS 396 (Miss. Ct. App. June 5, 2007), Peggy argues that when a trial judge does not make a record finding with regard to the issue of lesser sanctions, those findings are to be presumed.  Drawing from this Court's decision in *Watson*, the Court of Appeals stated that where the record does not indicate that the trial judge considered lesser sanctions, a presumption must be made that the trial judge found lesser sanctions to be insufficient. *Id*. at 10 (citing *Watson*, 493 So. 2d at 1279); *see also* *Hine*, 911 So. 2d at 1005 (citing *Watson*, 493 So. 2d at 1279).  However, the application of this "presumption" in *Watson* did not involve a trial court's consideration of lesser sanctions. *Watson*, 493 So. 2d at 1279.

We are less likely to uphold a Rule 41(b) dismissal where there is no indication in the record that lesser sanctions were considered. *AT&T*, 720 So. 2d at 181.  Accordingly, consideration of lesser sanctions cannot be presumed, but there should be *some indication* in the record that lesser sanctions were considered.

### i. Extent to which Jennings, as distinguished from his counsel, was personally responsible for the delay.

¶28. Jennings contends that he was not personally responsible for the delay. Jennings testified that Peggy's counsel had prolonged his efforts to move the case forward by continually "refusing to show or produce what was requested . . ." and canceling hearings and other meetings. Jennings stated that he called each of his attorneys "[n]o less than every week" and asked them to move the case forward. Additionally, in his order overruling Peggy's initial motion to dismiss, the chancellor found that "most of the delay occasioned in bringing this case to trial was not [Jennings], but others . . . ."

¶29. Where a litigant has not been an active participant in the fault, the sanction of dismissal with prejudice should be a last resort. *See Flaksa v. Little River Marine Constr. Co.*, 389 F.2d 885, 889 n.11 (5th Cir. 1968). While a client may be held accountable for his attorney's conduct, many courts have imposed lesser sanctions than dismissal where fault lies with the attorney rather than the client. *Rogers*, 669 F.2d at 322 (citing *Link v. Wabash Railroad*, 370 U.S. 626, 633-34, 82 S. Ct. 1386, 1390, 8 L. Ed. 2d 734, 740 (1962); 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2370, at 201 n.86 (1971)).

¶30. While the chancellor found that most of the delay was not attributable to Jennings individually, he also stated that Jennings bore the obligation to prosecute the case to a conclusion and that "he who seeks equity must be vigilant." *See Last Will and Testament of Winding v. Estate of Winding*, 783 So. 2d 707, 711 (Miss. 2001) (citing *In re Estate of Davis*, 510 So. 2d 798, 800 (Miss. 1987)).

¶31. We agree that Jennings must bear some responsibility for an almost nine-year period in which no substantive action was taken.

### ii. Degree of actual prejudice to Peggy.

¶32. Jennings contends that Peggy failed to prove actual prejudice and could show only the possibility of prejudice. Peggy, on the other hand, claims that the delay in this case is *per se* prejudicial because the passage of time alters physical evidence and impairs the memory of witnesses.

¶33. In his bench opinion, the chancellor cited three ways the unavailability of witnesses caused "some prejudice" to Peggy: (1) the unavailability of Louise, who was now deceased; (2) the unavailability of physicians who might have examined Louise before trial; (3) and the unavailability of long-time family attorney Robin Weaver. The unavailability of witnesses who could have provided valuable testimony may prejudice a defendant. *See Hoffman*, 752 So. 2d at 1035.

### a. Unavailability of Louise.

¶34. Rule 32(a)(3) of the Mississippi Rules of Civil Procedure allows a deposition to be used by any party for any purpose if the court finds that the witness is dead. Miss. R. Civ. P. 32(a)(3). Additionally, Rule 804(b)(1) of the Mississippi Rules of Evidence provides that when a witness is unavailable, a deposition taken in the course of the same proceeding may be offered provided that "the party against whom the testimony is now offered, . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." M.R.E. 801(b)(1). In *Lone Star Casino Corp. v. Full House Resorts, Inc.*, the Court of Appeals found that a defendant was not prejudiced by the inability of a witness

12

to testify in person, so long as all parties had an opportunity to pose questions and cross-examine the witness at the depositions. *Lone Star Casino Corp.*, 796 So. 2d at 1033.

¶35. Apparently in reaction to Louise being named as a party plaintiff with her son, Jennings, Peggy's lawyer deposed Louise on August 23, 1993. The testimony elicited from Louise established that she did not authorize a suit against her daughter (Peggy), that she did not want to sue her daughter, and that she wanted to be removed from the lawsuit. While she did answer questions about the deed, bank account, and other issues addressed in Jennings's lawsuit, the purpose of the deposition was primarily to show that she did not join in or authorize Jennings's lawsuit. The purpose of the deposition was not to conduct discovery or elicit testimony for trial on the issues framed in Jennings's claim.

¶36. Louise's deposition ultimately was recessed due to objections to improper leading by Jennings's counsel.[11] Subsequently, on June 22, 1994, an order dismissed Louise as a party to the litigation.

¶37. Because of the limited scope of Louise's deposition, which was never completed, we agree with the chancellor's finding of prejudice to Peggy because of Louise's intervening death.[12]

      **b.**       **Unavailability of physicians who could have examined Louise before trial.**

_____

[11] The chancellor overruled Peggy's objection in an order dated December 28, 1993.

[12] In his bench opinion, the chancellor stated that Louise's unavailability prejudiced Peggy because "sometimes when you take a deposition, you have a different strategy than what you would have at trial." Given the purpose and scope of Louise's deposition, Peggy most likely would have employed a different strategy at trial.

13

¶38.   The chancellor also found that Peggy suffered prejudice because "physicians that might have examined [Louise] before [trial] are not available." We are unable to find a basis for such a finding in the record.

¶39.   The relevant time for considering Louise's mental capacity is on the date of execution of the deed, not any time thereafter. *See Mullins v. Ratcliff*, 515 So. 2d 1183, 1195 (Miss. 1987); *Smith v. Smith*, 574 So. 2d 644, 654 (Miss. 1990). There is testimony from Peggy that she took Louise to the doctor prior to the date that the deed was executed. But, there is no evidence that such doctor(s) had any knowledge with respect to Louise's mental condition on the date the deed was executed, or that such doctor(s), if he or she had such knowledge, was unavailable.

¶40.   Considering the present state of the record, we cannot say that Peggy suffered prejudice because of the unavailability of physicians who could have examined Louise before trial.[13]

### c.     Unavailability of Robin Weaver.

¶41.   The chancellor found that Peggy was prejudiced because of the unavailability of long-time family attorney Robin Weaver. Jennings contends that Weaver could not testify as to any relevant issue in this case because Weaver had no involvement in drafting the deed. Peggy asserts that Weaver could have impeached Jennings's testimony regarding Jennings's

---

[13] While not relevant to the issue of prejudice, the testimony of two physicians, or one physician and a psychologist, would have been required to establish a conservatorship for Louise. *See* Miss. Code Ann. § 93-13-255.

14

alleged alteration of a separate deed in an unrelated transaction in Sunflower County that did not involve Peggy or Louise.[14]

¶42. Under Rule 608(b) of the Mississippi Rules of Evidence, Robin Weaver could not have testified about the Sunflower property deed. Such testimony would be an effort to prove specific instances of conduct through extrinsic evidence in order to impeach Jennings. Therefore, we find that the unavailability of Robin Weaver could not have prejudiced Peggy.

### d. Presumed prejudice.

¶43. Peggy argues that the passage of time in this case is *per se* prejudicial. Peggy claims that her own testimony as an adverse witness at trial was impaired due to the passage of time in this case.

¶44. Prejudice may be presumed from unreasonable delay. *Rogers*, 669 F.2d at 322 n.7 (quoting 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2370, at 216-17 (1971)). However, the preference for a decision on the merits "must be weighed against any presumed prejudice to the defendant and the court may decide to excuse plaintiff's lack of diligence in the absence of any actual prejudice to the defendant." *Rogers*, 669 F.2d at 322 n.7 (quoting 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2370, at 216-17 (1971)).

¶45. Nothing in the record indicates that the passage of time altered any physical evidence. However, one of Jennings's witnesses, Jimmy Wilder, stated that he had difficulty

---

[14] As part of her effort to impeach Jennings, Peggy offered a deed describing twelve lots in Sunflower, Mississippi. Peggy argued that Jennings had removed his own name as grantee on the deed in order to avoid paying capital gains taxes. Peggy asserts that Robin Weaver could have testified about this Sunflower deed.

remembering events that had transpired so long ago. Given the length of time that passed in this case, and the effect that time has on the memory of witnesses, we find that Peggy is due some measure of presumed prejudice.

### iii. Whether the delay was the result of intentional conduct.

¶46. Jennings submits that no proof was shown that the delay was intentional. We agree.

### D. Whether dismissal was appropriate given the procedural posture of this case.

¶47. Jennings raises a number of additional arguments why Rule 41(b) dismissal was inappropriate. Jennings contends that there is no Rule 41(b) dismissal case from Mississippi in which a plaintiff attempted to move the case forward by filing additional discovery requests or a motion for trial setting, and then faced dismissal for failure to prosecute.

¶48. The procedural posture of this case is unique. However, there have been prior cases before this Court and the Court of Appeals in which Rule 41(b) dismissals were granted in the lower court even after the plaintiff tried to advance the case. ***Miss. Dep't of Human Servs. v. Helton***, 741 So. 2d 240, 241 (Miss. 1999) (motion to dismiss filed on the date of trial); ***Lone Star***, 796 So. 2d at 1032 (motion to dismiss filed in response to plaintiff's motion to substitute counsel). In both ***Helton*** and ***Lone Star***, the lower court's Rule 41(b) dismissal ultimately was reversed on appeal. ***Helton***, 741 So. 2d at 241; ***Lone Star***, 796 So. 2d at 1033. However, the timing of the Rule 41(b) motions was not a basis for reversal in those cases. *See id*.

¶49. Jennings also submits that there is no Mississippi case in which a dismissal for failure to prosecute was granted during the trial. In this case, the chancellor granted dismissal for

failure to prosecute after Jennings had presented his case-in-chief. Jennings correctly points out that involuntary dismissal is not appropriate where the merits of a case have been considered. *Wallace*, 572 So. 2d at 376. However, in denying Peggy's pre-trial motion to dismiss, the chancellor had reserved the right to dismiss the case later if he found that the delay had prejudiced Peggy.

¶50. Jennings argues further that it would be "incongruous for the plaintiff to have taken the first action toward having the matter set for trial and then reward the defendant for her failure to do so." Yet the responsibility to prosecute a case rests with the plaintiff, not the defendant. *See* Miss. R. Civ. P. 41(b).

¶51. While a fine balance must be struck between the interests of having a case tried on the merits and the interests of judicial economy, we find that the chancellor did not abuse his discretion in dismissing this case.

**II. Whether the chancellor erred in failing to "find the facts specially and state separately [his] conclusions of law thereon" as requested by Jennings.**

¶52. Jennings requests that the case be remanded for specific findings of fact and conclusions of law. Jennings points to Rule 52(a) which states that "in all actions tried upon the facts without a jury the court may, and shall upon the request of any party . . . find the facts specially and state separately its conclusions of law thereon." Miss. R. Civ. P. 52(a).

¶53. Jennings raised this issue in his motion for reconsideration, for a new trial, or for findings of fact and conclusions of law. The chancellor determined that his bench opinion had been made a part of the record and that such opinion articulated sufficient findings of fact and

17

conclusions of law to support his decision. Thus, the chancellor declined to make any further findings of fact and conclusions of law.

¶54. Rule 41(b) provides that "[i]f the court renders judgment on the merits against the plaintiff, the court *may* make findings as provided in Rule 52(a)." Miss. R. Civ. P. 41(b) (emphasis added) (with certain exceptions, a dismissal under Rule 41(b) operates as an adjudication on the merits). Thus, Rule 41(b) makes specific findings of fact and conclusions of law discretionary with the trial court.

¶55. We find that the chancellor did not abuse his discretion in refusing to provide specific findings of fact and conclusions of law. The chancellor's bench opinion was sufficient to explain and support his adjudication of the matter.

## CONCLUSION

¶56. We hold that chancellor did not abuse his discretion in dismissing the second amended complaint of A. Jennings Cox, Jr., under Rule 41(b) of the Mississippi Rules of Civil Procedure, for failure to prosecute. Furthermore, the chancellor did not abuse his discretion in not providing specific findings of fact and conclusions of law. Therefore, we affirm.

¶57. **AFFIRMED**.

SMITH, C.J., DIAZ, P.J., EASLEY, CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY.

18