# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-01175-SCT

## CONSOLIDATED WITH:

## NO. 2009-CA-00052-SCT

*STATE OF MISSISSIPPI, EX REL., JIM HOOD,*
*ATTORNEY GENERAL*

*v.*

*LOUISVILLE TIRE CENTER, INC. d/b/a FAIR OIL*
*COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/02/2015 |
| TRIAL JUDGE: | HON. JOSEPH KILGORE |
| COURT FROM WHICH APPEALED: | WINSTON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MEREDITH McCOLLUM ALDRIDGE |
| | ALISON O'NEAL McMINN |
| ATTORNEYS FOR APPELLEE: | CHARLES E. WINFIELD |
| | ASHLYN BROWN MATTHEWS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 12/08/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., COLEMAN AND MAXWELL, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     In 2007, the State of Mississippi, through the Attorney General's office, filed suit against Louisville Tire Center, Inc. d/b/a Fair Oil Company (Fair Oil) for violating Mississippi's price-gouging statute. Fair Oil filed a successful motion for summary judgment on the basis that the price-gouging statute was unconstitutional as written; however, on

appeal, the Court reversed the grant of summary judgment and remanded the case for the Winston County Chancery Court to examine Fair Oil's conduct in light of the statute's language. *State ex rel. Hood v. Louisville Tire Center, Inc.*, 55 So. 3d 1068, 1074 (¶ 15) (Miss. 2011). After remand, several years passed without activity in the case, and in July 2015, the chancery court granted Fair Oil's motion to dismiss for want of prosecution pursuant to Mississippi Rule of Civil Procedure 41(b). The State appeals the chancery court's decision granting Fair Oil's motion to dismiss. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Prior to Hurricane Katrina making landfall, Governor Haley Barbour signed a proclamation declaring a state of emergency throughout Mississippi on August 26, 2005. Only a few days later, Hurricane Katrina arrived, leaving devastation in its wake. In the years that followed, the State began investigating businesses for violating Mississippi Code Section 75-24-25, which prohibits price-gouging during times where a state of emergency has been declared. The State issued Fair Oil a Civil Investigative Demand requesting information about its pricing and fuel costs during the state of emergency. Ultimately, the State filed suit against Fair Oil in 2007 for violating Section 75-24-25.

¶3.     Following remand in 2011, Judge Joseph Kilgore notified the parties of a possible conflict; however, by separate letters sent in June 2011, both parties waived any objection to Judge Kilgore's continued participation in the case. According to the chancery court's docket, no party took any action in the case from the June 2011 letters until the State's December 2014 motion for a status conference.

2

¶4. Shortly after the State filed its motion for a status conference, Fair Oil filed a motion to dismiss for want of prosecution in January 2015. According to Fair Oil's motion to dismiss, "in the forty-two month period from the date of [Judge Kilgore's] letter until a December 2014 telephone call from Martin Edwards of the Attorney General's office . . . there were . . . only four conversations between members of the Attorney General's office and Fair Oil's counsel." Fair Oil further explained that none of the conversations was substantive. Finally, Fair Oil claimed that such a significant delay in the case has prejudiced its ability to defend itself due to the death of Jerry Wilkerson, the former executive director of the Mississippi Petroleum Marketers and Convenience Store Association (MPMCSA), who "was of central importance to Fair Oil's defense of this action because he was involved in providing guidance to Fair Oil regarding the statute's requirements and with respect to the Attorney General's prior interpretations of that statute."[1]

¶5. The State adamantly argued that the chancery court should not grant Fair Oil's motion to dismiss because the law favors trials on the merits and that serious settlement negotiations took place between the parties from June 2011 through December 2014/January 2015, which explains the delay in pursuing a trial date. The State also explained that, each time it received a stale-case notice from the chancery court, it alerted the chancery court clerk of the ongoing negotiations and its intent to proceed with the case. Additionally, the State

---

[1] Fair Oil also cited the loss of testimony from its store operators due to the deteriorated health condition of Estella Harris as a prejudice to its defense; the current health and economic condition of Sammie Harris, Estella Harris's husband at the time of Hurricane Katrina, as prejudice to its defense; and Garland Smith, who was a driver for Fair Oil, and whose memory may now be compromised, as prejudice to its defense. However, the State does not discuss them in its brief on appeal.

explained that staffing changes and departures coupled with Fair Oil's counsel's "medical event" and recovery also contributed to the delay.

¶6.    The chancery court held a hearing on Fair Oil's motion to dismiss on April 15, 2015, and it issued its opinion and order on July 6, 2015.  In its opinion and order, the chancery court granted Fair Oil's motion to dismiss pursuant to Rule 41(b).  The chancery court concluded that, following remand from the Court, "[i]n the almost four years since, the Attorney General's office has made no substantive efforts to pursue its claims against Fair Oil."  The chancery court did not buy the State's argument that staffing changes justified the delay, nor did it buy the argument that the settlement efforts were sufficient to justify the delay as "it does not appear that there were any meaningful settlement negotiations in this case and no actual proposal was submitted to Fair Oil for consideration."  The chancery court also reviewed the facts for the presence of aggravating factors, which are not necessary but serve to strengthen the case for a Rule 41(b) dismissal.  The chancery court determined that the death of Jerry Wilkerson during the pendency of the suit actually prejudiced Fair Oil's defense.  Finally, the chancery court explained that, while dismissal with prejudice is an extreme and harsh sanction, "any lesser sanctions, including explicit warnings, would not suffice under the facts of this case because any lesser sanction could not cure the prejudice to Fair Oil caused by the delay."

¶7.    Aggrieved by the chancery court's judgment, the State filed the present appeal and outlined the following three issues for appeal:

I.    There was no "clear record of delay" or contumacious conduct.

II.     Lesser sanctions would better serve the interests of justice, especially in the absence of actual or presumed prejudice.

III.    There were no aggravating factors present that support a dismissal with prejudice.

## ANALYSIS

¶8.     A lower court's dismissal of an action under Rule 41(b) is reviewed on appeal using the abuse-of-discretion standard. ***Manning v. King's Daughters Med. Ctr.***, 138 So. 3d 109, 116 (¶ 19) (Miss. 2014) (citing ***Holder v. Orange Grove Med. Specialities, P.A.***, 54 So. 3d 192, 196 (¶ 16) (Miss. 2010)). Undisputedly, "the law favors a trial of the issues on the merits, [so] a dismissal for lack of prosecution is employed reluctantly." ***Holder***, 54 So. 3d at (¶ 16) (quoting ***Miss. Dep't of Human Servs. v. Guidry***, 830 So. 2d 628, 632 (¶ 13) (Miss. 2002)). However, as the Court has explained, "Rule 41(b) embodies the tenet that 'any court of law or equity may exercise the power to dismiss for want of prosecution. This power, inherent to the courts, is necessary as a means to the orderly expedition of justice and the court's control of its own docket.'" ***Hillman v. Weatherly***, 14 So. 3d 721, 726 (¶ 17) (Miss. 2009) (quoting ***Cucos, Inc. v. McDaniel***, 938 So. 2d 238, 240 (¶ 5) (Miss. 2006)).

¶9.     In analyzing the dismissal of a case pursuant to Rule 41(b), the Court first looks to see if there is "a record of dilatory or contumacious[2] conduct by the plaintiff[.]" ***Holder***, 54 So. 3d at 197 (¶ 18). Then, the Court determines if lesser sanctions other than dismissal would better serve the interests of justice. ***Id.*** The Court also may consider aggravating factors or

---

[2] There is no allegation of contumacious conduct in the instant case.

5

actual prejudice to the defendant, and the presence of the factors or prejudice, though not necessary, may strengthen a case for dismissal. *Id.*

### I.      *Delay or Dilatory Conduct*

¶10.    The crux of the State's argument is that its staffing losses, the continuous and ongoing settlement discussions after remand, and Fair Oil's use of Rule 41(b) as an "offensive tool" are sufficient for the Court to find that the plaintiff engaged in no dilatory conduct, and the chancery court's decision otherwise was in error. We disagree and hold that the chancery court did not abuse its discretion in determining that the delay was inexcusable.

¶11.    First, though a staffing issue or securing substitute counsel *may* excuse a delay, staffing issues do not excuse the length of delay in the present case. In *Cox v. Cox*, 976 So. 2d 869, 875 (¶ 20) (Miss. 2008), the Court addressed a similar issue in which the plaintiff claimed his efforts to secure substitute counsel contributed to the delay at issue. The Court acknowledged that such activity could excuse the delay; however, approximately seven years passed "in which no activity occurred on the docket and almost nine years in which Jennings [Cox] took no action on the case." *Id.* In the present case, the Court remanded the case in 2011, and also in 2011, the State filed a motion to withdraw counsel and substitute two other attorneys in the office, who already had entered appearances in the case before, to continue the representation. Additionally, the motion to withdraw counsel stated that "no prejudice will occur *to any of the parties* if this motion is granted." (Emphasis added.) Then one of the substituted attorneys transferred to another division in early 2012; however, the case still had one attorney involved. Yet, save a few phone calls to Fair Oil's counsel, the State

6

neither filed nor pursued anything for approximately three years. We are unpersuaded that the staffing issue provides a legitimate excuse for such a delay.

¶12. Next, the State claims that during the period of on-the-record inactivity from 2011 until late 2014/ early 2015, the parties were engaged in ongoing settlement discussions. Each time the chancery clerk issued stale-case notices, the State claims it reached out to Fair Oil to pursue the case or discuss settlement options. According to the State, the conversations between the parties involved discussing "specific settlement terms." Fair Oil disputes that the four phone conversations over the course of several years were anything beyond case-status discussions and submits that there were no meaningful attempts to actually settle the case. Charged with weighing the conflicting testimony, the chancery court concluded there were no "meaningful settlement negotiations in this case and no actual proposal was submitted to Fair Oil for consideration." The chancery court is correct that the record does not contain any proposed settlement offers made to Fair Oil nor any other evidence that the settlement negotiations were substantive. Again, the *Cox* court addressed the same issue and concluded that settlement efforts may constitute excusable delay, but, "[e]ven assuming that informal settlement discussions took place during the significant period of inactivity, Jennings [Cox] should have abandoned settlement efforts and pursued litigation on his claim when it became apparent that negotiations were unyielding." *Cox*, 976 So. 2d at 875 (¶¶ 21-22). Again, we conclude that the chancery court did not abuse its discretion in determining that the settlement negotiations were not an excuse for the delay.

7

¶13. Lastly, the State appears to argue, albeit briefly, that the Court should consider Fair Oil's use of a Rule 41(b) motion "as an offensive tool to evade a trial on the merits when the Attorney General sought to advance the case." The State compares Fair Oil's filing of the Rule 41(b) motion to cases in which the Court has not excused a delay for plaintiffs who began moving forward with a case *only after* the defendant sought Rule 41(b) relief. Such scenario is not what happened in the present case, and the State does not provide a citation to authority in which the Court has held that the defendant committed misconduct by filing a Rule 41(b) motion to dismiss after the plaintiff initiated action in a suit following a delay also caused by the plaintiff. We decline to do so now.

¶14. We hold that the chancery court did not abuse its discretion in finding a clear record of delay by the State in pursuing the case.

## II. Lesser Sanctions

¶15. The State next claims that the chancery court erred in not considering, and ordering, lesser sanctions, particularly in light of the argument that Fair Oil was not prejudiced by the loss of Jerry Wilkerson's testimony. Again, we point to the Court's analysis in *Cox*, where we explained:

> The fact that lesser sanctions were argued before the chancellor, that the chancellor considered all arguments prior to granting dismissal, and the chancellor denied Jennings [Cox]'s motion for reconsideration, in which Jennings [Cox] argued that lesser sanctions had not been considered, is sufficient to show that lesser sanctions were considered and rejected.

*Cox*, 976 So. 2d at 876 (¶ 25). The chancery court's opinion in the present case clearly considered lesser sanctions. The opinion specifically acknowledged the "explicit warning"

8

sanction argued by the State during a hearing, before concluding that lesser sanctions were not appropriate in the present case, particularly due to the prejudice to Fair Oil by the loss of Jerry Wilkerson's testimony. It is clear that the chancery court heard oral argument on the lesser sanctions and considered the issue when making its decision; therefore, we hold that the chancery court did not abuse its discretion in determining that lesser sanctions were not sufficient.

### III.    Aggravating Factors

¶16.    The final issue raised by the State is that the chancery court erred in determining that an aggravating factor– prejudice to Fair Oil over the loss of Jerry Wilkerson's testimony– existed in the case. Aggravating factors include "the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, the degree of prejudice to the defendant, and whether the delay was the result of intentional conduct." ***AT&T v. Days Inn of Winona***, 720 So. 2d 178, 181 (¶ 13) (Miss. 1998) (citation omitted). To reiterate from above, the presence of the aggravating factors is not a requirement, specifically when "[d]elay alone may suffice for a dismissal under Rule 41(b)." ***Holder***, 54 So. 3d at 198 (¶ 20) (citing ***Cox***, 976 So. 2d at 875 (¶ 17)). However, the chancery court in the present case did find that Fair Oil suffered actual prejudice by the delay.

¶17.    The State argues that the loss of Jerry Wilkerson's testimony did not justify dismissal of the action. According to the State, Fair Oil can present the same testimony that Jerry Wilkerson would have provided from other witnesses and sources; thus, the loss of Jerry Wilkerson's testimony was not critical to Fair Oil's defense. Fair Oil claimed that Jerry

9

Wilkerson's testimony was vital because he could explain "his dealings with the Attorney General's office, his efforts to provide guidance to distributors such as Fair Oil, and his conversations with John Fair and Fair Oil, both generally and during the state of emergency at issue." John Fair's affidavit stated that he sought Jerry Wilkerson's advice because of his role and experiences as executive director of MPMCSA, and Jerry Wilkerson "would have provided testimony regarding our conversations, his advice to me, and his experiences. This would have included testimony regarding our conversations during the pendency of the state of emergency at issue and Fair Oil's good faith efforts to comply with Mississippi law. I am not aware of any other employee of the MPMCSA who would provide such testimony." The State also points to the fact that Fair Oil did not list Jerry Wilkerson as an expected witness during the discovery process in 2008 but only as a person with discoverable knowledge; however, as Fair Oil explains, it did not list *any* expected witnesses in its response to the discovery request with the caveat that it would update its witness list at a later date. Finally, the State submits that if Fair Oil considered Jerry Wilkerson's testimony to be crucial, it should have reserved his testimony through a deposition.

¶18.    In *Jackson Public School District v. Head ex rel. Russell*, 67 So. 3d 761, 767 (¶ 23) (Miss. 2011), the Court stated: "Although prejudice can be presumed for unreasonable delay, the preference for a decision on the merits 'must be weighed against any presumed prejudice to the defendant and the court may decide to excuse plaintiff's lack of diligence in the absence of any actual prejudice to the defendant.'" *Id.* (quoting *Cox*, 976 So. 2d at 879 (¶ 44)). We see no need to quibble over whether Jerry Wilkerson's testimony was so critical

10

to the case as Fair Oil claims or whether the testimony was easily replaceable, as the State claims. Instead, keeping in mind our abuse-of-discretion standard of review, the chancery court did not err in allocating some prejudice – actual and/or presumed – to Fair Oil due to the several-years delay in the case and the resulting loss of Jerry Wilkerson's testimony. The chancery court weighed the evidence and determined that Fair Oil was prejudiced and such finding is supported by evidence in the record.

## CONCLUSION

¶19. The State filed the case *sub judice* in 2007, alleging that Fair Oil had violated the price-gouging statute after Hurricane Katrina. Fair Oil successfully won a motion for summary judgment until the Court reversed the summary judgment and remanded the case to the chancery court in 2011. Following the 2011 remand, the case remained stagnant on the chancery court docket until the end of 2014. The chancery court's findings of fact are supported by evidence in the record, and we discern no abuse of discretion. Accordingly, we affirm the chancery court's decision.

¶20. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, MAXWELL AND BEAM, JJ., CONCUR. KING, J., NOT PARTICIPATING.**