911 So.2d 1001 (2005)
Lynn P. HINE and Alta Hine, Appellants
v.
ANCHOR LAKE PROPERTY OWNERS ASSOCIATION, INC., Appellee.
No. 2004-CA-01941-COA.
Court of Appeals of Mississippi.
September 27, 2005.
*1002 Victor John Franckiewicz, Jeremy Paul McNinch, attorneys for appellants.
F. Keith Ball, Allison P. Fry, Jackson, attorneys for appellee.
Before KING, C.J., IRVING and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Lynn P. and Alta Hine brought suit against the Anchor Lake Property Owners Association, Inc. ("ALPOA") in the Chancery Court of Pearl River County alleging that ALPOA was liable for flood damage to the Hines' home and property and asking for immediate injunctive relief, along with compensatory and punitive damages. Over six years later, the chancellor dismissed their complaint for failure to prosecute under Mississippi Rule of Civil Procedure 41(b). The Hines timely appealed. Finding no error, we affirm.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. The Hines own a three-bedroom home that borders Anchor Lake, an artificial body of water created by damming Stanfield Creek in Pearl River County. The drainage from the dam discharges via several avenues, including a primary spillway. Across this spillway ALPOA maintains a chain link fence.
¶ 3. The Hines' complaint, as amended, alleges that on seven occasions Anchor Lake flooded, and that the last four of these floods caused significant water damage to their home, outbuildings, foundation, and an automobile. Their primary argument is that the chain-link fence maintained by ALPOA collected debris which reduced the capacity of the spillway and caused the lake to rise to abnormally high levels, resulting in the flooding. The Hines allege that ALPOA had been on notice since as early as 1978 of deficiencies in the dam's ability to pass flood waters, and that the Hines had contacted ALPOA regarding its alleged negligent operation of the dam, but to no avail. The Hines also allege that ALPOA adopted a "wet dam" concept in 1997, meaning that the spillway gate was closed at all times so that drainage from the dam would be solely *1003 by means of the primary spillway. Because the primary spillway was obstructed by the debris-cluttered fence, the Hines argue that flooding of their property was the foreseeable result. Not surprisingly, ALPOA denied all allegations of liability.
¶ 4. Shortly after filing its answer, ALPOA filed its first request for production of documents and first set of interrogatories on November 2, 1998. Months later, on April 24, 1999, the Hines returned their answers to the first request for production of documents. At the same time, the Hines served ALPOA with their first set of interrogatories and request for production of documents. The Hines filed their dilatory answers to ALPOA's first set of interrogatories on May 2, 1999. For some reason not disclosed in the record, ALPOA did not respond to the Hines' first set of interrogatories and request for production of documents until October 20, 1999.
¶ 5. Upon receiving ALPOA's responses, the Hines took no further action. Finally on May 2, 2000, ALPOA took the initiative and noticed depositions of the Hines. ALPOA served the Hines with a request for admissions on June 23, 2000, and then issued subpoenas duces tecum to the Hines' physicians and property insurer on July 6. ALPOA then served the Hines with a second set of interrogatories on July 7, 2000.
¶ 6. The Hines did not answer ALPOA's request for admissions until August 31, 2000, well after the thirty days allowed by Rule 36(a) of the Mississippi Rules of Civil Procedure. While ALPOA might have sought to have the requests deemed admitted, it instead agreed to allow an extension of time for the Hines to respond. At that time, however, with ALPOA's second set of interrogatories still unanswered, the case became dormant.
¶ 7. On January 8, 2004, over three years after the last record of activity from the Hines, ALPOA filed a motion to dismiss under Rule 41(b) for failure to prosecute. Despite the Hines' protests, the trial court granted the motion, finding that the Hines had clearly failed to prosecute their cause and comply with the Mississippi Rules of Civil Procedure. In support of the decision, the court found that, from the initial filing of their complaint, the Hines had a history of delay in pursuing their case. The court found that the Hines had never responded in a timely manner to a discovery response, and that their last action in the prosecution of the case was four years previously. Furthermore, the court found that the Hines' proffered reasons for delay "provided no explanation" for the Hines' chronic dilatoriness. Aggrieved, the Hines appealed.

STANDARD OF REVIEW
¶ 8. The standard of review for a Rule 41(b) dismissal is abuse of discretion. Vosbein v. Bellias, 866 So.2d 489, 492(¶ 5) (Miss.Ct.App.2004). The decision of the trial court judge, in this case the chancellor, will not be overturned unless there has been manifest error. Watson v. Lillard, 493 So.2d 1277, 1279 (Miss.1986) (this is "a doctrine too well known to require citation").

ISSUE AND ANALYSIS
WHETHER THE CHANCELLOR ABUSED HIS DISCRETION IN DISMISSING THE HINES' COMPLAINT
¶ 9. Though not stated explicitly in the Hines' appellate brief, the sole issue raised on appeal is whether the chancellor's dismissal of their complaint was an abuse of discretion. It is well established that the law favors trial on the merits, and dismissals for want of prosecution are "reluctantly" granted. Am. Tel. and Tel. Co. v. Days Inn, 720 So.2d 178, 180(¶ 12) (Miss.1998) *1004 (citing Wallace v. Jones, 572 So.2d 371, 375 (Miss.1990)). However, a complaint may be dismissed under Mississippi Rule of Civil Procedure 41(b), "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court...." Unless the court otherwise specifies in its order, a dismissal under Rule 41(b) operates as an adjudication on the merits.
¶ 10. "Rule 41(b) dismissals with prejudice will be affirmed only upon a showing of `a clear record of delay or contumacious conduct by the plaintiff,' . . . and where lesser sanctions would not serve the best interests of justice." Am. Tel., 720 So.2d at 181(¶ 13) (quoting Rogers v. Kroger Co., 669 F.2d 317, 320 (5th Cir.1982)). Whether a dismissal is affirmed also turns on the presence of certain "aggravating factors," including "the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, the degree of actual prejudice to the defendant, and whether the delay was the result of intentional conduct." Id. (quoting Rogers, 669 F.2d at 320).
¶ 11. The parties in the instant case agree that the foregoing law elucidates a two-part test, satisfaction of which will determine the outcome of this appeal. First, it must be shown that there has been a clear record of delay or contumacious conduct on the part of the Hines. Second, it should be clear that lesser sanctions would not have sufficed to serve the best interests of justice in the present action. Also, we will look to whether certain "aggravating factors" are present.

A. Whether there is a clear record of delay or contumacious conduct
¶ 12. Since the filing of their initial complaint on May 4, 1998, the Hines have been dilatory in their prosecution of this case. The record below shows that the Hines required an extension of time to make proper service on ALPOA.[1] This delay was immediately followed by a delay in answering ALPOA's first set of interrogatories and request for production of documents. The Hines did not answer the interrogatories until May 2, 1999, which was 146 days after the date due, and they did not respond to the production of documents until April 24, 1999, which was 138 days after the date due. On April 24 the Hines made their last affirmative action in the prosecution of their case by propounding interrogatories and requests for production of documents to ALPOA. After this action, the Hines were late in responding to ALPOA's request for admissions, and they have yet to respond to ALPOA's second set of interrogatories, which were due three years and nine months prior to the court's dismissal of the action.
¶ 13. Under these facts, it is clear that the chancellor did not abuse his discretion in finding that there has been a clear *1005 record of delay. The Hines, in fact, admitted that there have been "significant delays," but argue that these delays were driven by "external factors," and thus the Hines' actions did not rise to the level of "contumacious conduct." We are indeed sympathetic to certain of the external factors, including Mr. Hine's battle with terminal kidney cancer, and the breakup of the Hines' marriage. However, the Hines have not shown that the delays in this case were necessitated by these external factors.
¶ 14. Further, this argument overlooks the fact that the test for dismissal under Rule 41(b) does not require contumacious conduct. Rather, the test is whether there is a clear record of delay or contumacious conduct by the plaintiff. Am. Tel., 720 So.2d at 181(¶ 13) (emphasis added). In this case, where a clear record of delay has been shown and even admitted, there is no need for a showing of contumacious conduct. This argument is without merit.

B. Whether lesser sanctions would best serve the interests of justice
¶ 15. Having established that there is a clear record of delay, we next must consider whether the chancellor erred in the consideration of lesser sanctions. Lesser sanctions have been held to include "fines, costs, or damages against plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings." Vosbein, 866 So.2d at 493(¶ 9) (citing Wallace, 572 So.2d at 377). The Hines argue that the chancellor clearly erred because he failed to consider lesser sanctions, and because he failed to make a showing on whether a lesser remedy would have sufficed.
¶ 16. While the chancellor did not expressly address lesser sanctions in his order, it is clear that the Hines, in their motion opposing ALPOA's motion to dismiss, raised the relevant law holding that a chancellor should consider lesser sanctions. Then, in the chancellor's order granting ALPOA's motion to dismiss, the chancellor specifically noted that he had considered "the evidence and the arguments submitted." The Hines filed a motion for reconsideration, which was also denied, and in that order the chancellor again stated that he had "considered all and singular the statements and arguments presented by the Hines." If the Hines failed to argue at the motion hearing how lesser sanctions would have remedied the harm caused by their delay, they cannot then fault the chancellor for not considering their arguments. Likewise, if they did argue that lesser sanctions would have been effective, then the chancellor's statements clearly show that lesser sanctions were considered and rejected. In either case, the result is the same: the chancellor ruled that the best interests of justice would be served if the case was dismissed.
¶ 17. Also, it should be noted that the chancellor need not make a "showing" that lesser sanctions would not suffice. When a trial judge does not make specific findings of fact, we will "assume that the trial judge made all findings of fact that were necessary to support his verdict." Watson, 493 So.2d at 1279; Cotton v. McConnell, 435 So.2d 683, 685 (Miss.1983); Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss.1983). The Mississippi Supreme Court applied this doctrine in Watson to rule that a trial judge's findings of fact on a Rule 41(b) dismissal were to be presumed. Watson, 493 So.2d at 1279. In the instant case, therefore, we must presume that the chancellor made the requisite findings to support his ruling that lesser sanctions would have been insufficient.
*1006 ¶ 18. A brief review of the facts in this case confirms that lesser sanctions would be ineffective. This case has already dragged on for approximately seven years. The ninety day limit for discovery imposed by Uniform Circuit and County Court Rule 4.04(A) has been overrun and rendered meaningless. ALPOA points out that the information initially gathered by both parties in this case is now stale, and the original evidence, such as the water level, landscape, and design and operation of the dam, may no longer be accurate; ALPOA argues that discovery would have to be conducted anew in many respects. We find that the delays may be extremely prejudicial to the defendant, since the passage of time may have altered the physical evidence of the landscape and the dam. This being the case, it is hard to see how attorney discipline, fines, or even a dismissal without prejudice could possibly rectify the damage done.
¶ 19. More importantly, there is simply no evidence that the case would be prosecuted any differently if it were reinstated. Mr. Hine, in a sworn affidavit, stated that the Hines are financially unable to pursue this action. He admits that he was forced to pay for preliminary engineering analysis on his credit card, and that he is unable to pay for the "additional work" that his counsel recommends.
¶ 20. But the barriers to the Hines' prosecution of this case are not only financial in nature. Tragically, Mr. Hine was diagnosed with cancer after the suit was filed. He has lost a kidney, developed diabetes, and become totally disabled due to the disease. He states that he has "personally handled the lawsuit," and that Mrs. Hine "has always depended on me for doing this sort thing [sic], and is not herself able to handle such matters." Furthermore, the Hines' marriage "broke up" in 2001, and Mr. Hine now lives in Alabama. With Mr. Hine totally disabled and living in another state, and Mrs. Hine unable and/or unwilling to pursue the action, the likelihood of timely prosecution upon reinstatement of this case is highly doubtful.
¶ 21. The Hines' attorneys asked the court below to adopt a "reasonable scheduling order," and asked the "indulgence" of the court in allowing them to prosecute the case in a "cost-effective manner." However, they have offered no proposed plan of action showing how any "cost-effective manner" of pursuing the case would be accomplished, or how such plan could be fit into a "reasonable scheduling order." Accordingly, we do not find that the chancellor abused his discretion in determining that lesser sanctions would not serve the best interests of justice.

C. Whether aggravating factors are present
¶ 22. The presence of aggravating factors is not necessary to sustain a dismissal under Rule 41(b). However, aggravating factors clearly bolster the dismissal of a case and have often been present in affirmed dismissals. See Am. Tel., 720 So.2d at 181(¶ 7) (citing Rogers, 669 F.2d at 320) (when dismissals are affirmed, aggravating factors are "usually" present).
¶ 23. The Hines argue that no aggravating factors are present here because certain delays in this case are attributable to their counsel, as well as the aforementioned "external factors." The thrust of their argument is that, because the delays were allegedly out of the Hines' control, the Hines are not personally responsible for the delays. ALPOA argues that the Hines are personally responsible, and that the Hines "intentionally" caused delay by failing to act. Both parties are incorrect to different extents.
*1007 ¶ 24. First, it is clear that the Hines' counsel is at least partially responsible for some of the delay in prosecuting this case. Counsel for the Hines admit that they were unable and/or unwilling to prosecute the Hines' case because of the press of other business and the loss of several attorneys in the firm. But we cannot place blame for delay solely on the shoulders of counsel. The Hines themselves have admitted that they are unable to prosecute this action. They admit that the delay in this case has been caused, at least in part, by their personal circumstances, including Mr. Hine's disability, the breakup of the Hines' marriage, and financial constraints.[2] These facts and admissions show that the Hines are at least partly responsible for the delay in this case.
¶ 25. ALPOA goes one step further and argues that the Hines' "failure to do anything was intentional." We cannot agree with this assertion. Certainly Mr. Hine did not intend to contract cancer, and surely ALPOA cannot be arguing that the Hines intended to cause the breakup of their marriage for purposes of this lawsuit. The facts in this case show that the delay was caused by omission, not commission. Nevertheless, whether these factors are "external" or not, the Hines have been responsible for delay in this case.
¶ 26. We find that the delay in prosecution is caused solely by the Hines and their counsel; ALPOA appears to have vigorously defended the action. See Tims v. City of Jackson, 823 So.2d 602, 607(¶ 16) (Miss.Ct.App.2002) (held that defendant's responsibility for delay was factor in finding that case was improperly dismissed). The sole exception seems to have been a delinquent response by ALPOA to the Hines' first set of interrogatories. We find that this small infraction has little or no bearing on the issues leading up to the filing of ALPOA's motion to dismiss.
¶ 27. We hold that the chancellor did not abuse his discretion in dismissing the Hines' complaint under Rule 41(b). There is a clear record of delay, and no showing that lesser sanctions would have been appropriate. Accordingly, we affirm.
¶ 28. THE JUDGMENT OF THE PEARL RIVER COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER AND ISHEE, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.
NOTES
[1] The Hines urge that this delay was due to a combination of reasons, including settlement negotiations and an inability to find ALPOA's proper agent for service. These arguments are disingenuous at best. Service of summons is not an optional matter when a complaint is filed. See M.R.C.P. 4(a) ("Upon filing of the complaint, the clerk shall forthwith issue a summons.") (emphasis added). The rules require that service be effected within 120 days of when the complaint is filed, or the lawsuit will be dismissed. M.R.C.P.4(h).

As to the inability to locate ALPOA's proper agent, the record reflects that the Hines did not have summons issued for the agent until August 31, 1998, exactly 119 days after the filing of their complaint. Because the Hines waited until almost the last possible day to serve the summons, they were forced to file for an extension of time when they discovered that ALPOA's agent was deceased. Clearly, then, the delay in service of process was not caused by an inability to locate ALPOA's agent, but rather by the Hines' delay in attempting to serve the summons.
[2] We are well aware of the Mississippi Supreme Court's holding in Watson, where the Court commented that "this Court is loath to presume that any Mississippi trial judge would allow a serious action to be lost because of delays attributable solely to plaintiff's illness or infirmity." Watson, 493 So.2d at 1279-80. However, we note in the instant action that the delays attributable to the Hines are not caused solely by Mr. Hine's illness and disability. Rather, the delays are due to the aforementioned combination of factors, including, importantly, the Hines' financial constraints, which apparently continue to this day.