MYERS, P.J.,
 

 for the Court.
 

 ¶ 1. On December 7, 2006, Marguerite Holder and her husband, Herbert Holder, (plaintiffs) filed a medical-negligence suit against Orange Grove Medical Specialities, P.A., Boyd Benefield, M.D., and John Does One through Five (defendants). The complaint alleged that on October 14, 2004, Marguerite suffered a hemorrhagic stroke as a result of the defendants’ failure to monitor and adjust her medication levels. The trial court dismissed the suit with prejudice as to each defendant on July 29, 2008, for want of prosecution. From that judgment, the plaintiffs appeal to this Court. Finding error, we reverse the trial court’s judgment and remand for further proceedings consistent with this opinion.
 

 FACTS
 

 ¶ 2. On September 21, 2004, Marguerite was admitted to Garden Park Medical Center after having been diagnosed with a new onset of atrial fibrillation. She was discharged from Garden Park on or about September 26, 2004, by Dr. Benefield and placed on the blood thinning medication, Coumadin.
 

 ¶ 3. According to the complaint, blood tests taken on October 6, 2004, indicated that the Coumadin levels in her therapy were therapeutically too high for her condition and placed her at a greater risk for a stroke. No change in her therapy was ordered, but a follow-up appointment was made for October 13, 2004. Also, an appointment had been scheduled with Dr. Shah,
 
 [1]
 
 Marguerite’s cardiologist, who apparently had been called in as a consultant by Dr. Benefield when Marguerite was in the hospital.
 
 [2]
 

 ¶ 4. The plaintiffs alleged that when Marguerite arrived for her appointment at Orange Grove on October 13, she was told by an unnamed employee, who is a nurse at clinic, that additional blood work would not be necessary because it had been performed the week before. Marguerite did not see the doctor that day, and no adjustments were made to her Coumadin therapy. The following day, Marguerite suffered a hemorrhagic stroke.
 

 ¶ 5. The plaintiffs filed their complaint on December 7, 2006.
 
 [3]
 
 The defendants
 
 *247
 
 filed a motion for enlargement of time in which to file an answer which was granted on January 8, 2007. The defendants thereafter timely filed their answer and defenses to the plaintiffs’ complaint on February 12, 2007. Along with that motion, the defendants filed a motion to compel waiver of medical privileges, which included their “First Set of Interrogatories and Requests for Production of Documents to the Plaintiffs.”
 

 ¶ 6. On March 8, 2007, counsel for the plaintiffs sent correspondence to counsel for the defendants advising that he was in trial on another matter “for the next couple of days” and would not be able to complete discovery until that trial was concluded.
 

 ¶ 7. On May 4, 2007, counsel for the defendants sent correspondence to the plaintiffs’ counsel inquiring when responses to the defendant’s discovery requests would be completed. On May 22, 2007, counsel for the plaintiffs provided the defendants with an “Authorization to Disclose, Release and Furnish Protected Health Information.”
 

 ¶ 8. On May 24, 2007, counsel for the defendants re-faxed his May 4th inquiry about completion of discovery to the plaintiffs’ counsel, and did so again on June 4, 2007. According to the defendants, each request was ignored.
 

 ¶ 9. On May 5, 2008, counsel for the plaintiffs sent a letter to counsel for the defendants requesting to take Dr. Bene-field’s deposition; two days later, counsel for the plaintiffs filed their interrogatories and requests for production of documents. On May 9, 2008, the defendants filed a motion to dismiss for failure to prosecute, citing in part the plaintiffs’ failure to answer discovery.
 

 ¶ 10. On May 22, 2008, the plaintiffs filed their answers to the interrogatories and request for production of documents propounded by the defendants which had been filed on February 12, 2007, along with a motion to compel the deposition of defendant, Dr. Benefield. The defendants responded on June 10, 2008, by filing a motion seeking to strike the plaintiffs’ motion to compel the taking of Dr. Benefield’s deposition. On July 24, 2008, the plaintiffs filed their response to the defendants’ motion to dismiss for failure to prosecute.
 

 1111. The defendants’ motion to dismiss came before the Circuit Court of Harrison County on July 25, 2008. A hearing was held on the matter after which the trial court ordered the case dismissed with prejudice holding: “I feel like that the delays in responding to discovery and not pursuing the case as it should have been for this period of time is certainly sufficient for the Court to deem that the case was not pursued properly; that it should be dismissed for failure to prosecute the case.”
 

 ¶ 12. Upon request from the plaintiffs’ counsel that a statement of findings of fact and conclusions of law be made by the court, the trial judge stated: “I’m not go
 
 *248
 
 ing to make a finding of fact and conclusion of law any further than adopting the argument of counsel for the defendant, the cases that he has cited as to the basis for the dismissal (sic). And the record speaks for itself. That’s it.”
 

 ¶ 13. This appeal followed.
 

 WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DISMISSING THE CASE FOR WANT OF PROSECUTION
 

 ¶ 14. Our trial courts have the inherent authority to dismiss cases for want of prosecution as a means of controlling the court’s docket and ensuring the “orderly expedition of justice.”
 
 Watson v. Lillard,
 
 493 So.2d 1277, 1278 (Miss.1986). Rule 41(b) of the Mississippi Rules of Civil Procedure provides for the dismissal of a case upon the defendant’s motion for dismissal for want of prosecution. “What constitutes failure to prosecute is considered on a case-by-case basis.”
 
 Cox v. Cox,
 
 976 So.2d 869, 874 (¶ 14) (Miss.2008) (citing
 
 Am. Tel. and Tel. Co. v. Days Inn of Winona,
 
 720 So.2d 178, 181 (¶ 12) (Miss.1998)). A Rule 41(b) dismissal is reviewed under an abuse of discretion standard.
 
 Id.
 
 at 874 (¶ 11).
 

 ¶ 15. We are mindful that “the law favors trial of issues on the merits, and dismissals for want of protection are therefore employed reluctantly.”
 
 Am. Tel. and Tel. Co.,
 
 720 So.2d at 180(1111) (citing
 
 Watson,
 
 493 So.2d at 1278). This Court cannot uphold a Rule 41(b) dismissal with prejudice unless the record clearly shows either delay or contumacious conduct by the plaintiff, and “lesser sanctions would not serve the best interests of justice.”
 
 Tolliver ex rel. Wrongful Death Beneficiaries of Green v. Mladineo,
 
 987 So.2d 989, 997 (¶ 21) (Miss.Ct.App.2007) (quoting
 
 Am. Tel. and Tel. Co.,
 
 720 So.2d at 181 (¶ 13)). A dismissal of a case with prejudice usually will be affirmed when clear delay or contumacious conduct has been shown, and “there is at least one other aggravating factor warranting the harshest of sanctions.”
 
 Id.
 
 The type of aggravating factors supportive of a dismissal with prejudice are: “(1) delay caused by the plaintiff personally, (2) delay causing prejudice to the defendant, and (3) delay resulting from intentional conduct.”
 
 Id.
 

 A. Clear Record of Delay or Contumacious Conduct
 

 ¶ 16. The plaintiffs do not dispute that there was a delay both in answering the defendants’ discovery from the date the discovery was due and in filing with the court their own discovery requests. They contend, however, that the delay was unintentional and that the defendants should have been required to file a motion to compel rather than fast-forward to the so-called nuclear option of a motion to dismiss for failure to prosecute.
 
 [4]
 

 ¶ 17. Pursuant to Rule 33 of the Mississippi Rules of Civil Procedure, the plaintiffs were required to serve their answers, and any objections thereto, within thirty days of having received the defendants’ interrogatories on February 12, 2007. M.R.C.P. 33(b)(3). According to the record, the plaintiffs did not submit their answers to the propounded interrogatories until May 22, 2008 — 435 days past the thirty-day deadline set forth by Rule 33. Apart from informing the defendants via correspondence on March 8, 2007, that discovery would be delayed for a couple of days, and providing the defendants with a medical-release waiver on May 22, 2007, the
 
 *249
 
 record shows no other activity that was undertaken by the plaintiffs during this period with regard to the defendants’ discovery requests.
 

 ¶ 18. The record also reveals that no action was commenced by the plaintiffs with regard to their own discovery until May 5, 2008, when counsel for the plaintiffs sent a letter to counsel for the defendants requesting to take the deposition of Dr. Benefield. Two days later, on May 7, the plaintiffs, for the first time, propounded their own interrogatories and requests for production of documents to the defendants.
 

 ¶ 19. Uniform Rule of Circuit and County Court 4.04(A) states, in part, that: “All discovery must be completed within ninety days from service of an answer by the applicable defendant. Additional discovery time may be allowed with leave of court upon written motion setting forth good cause for the extension.” The record reflects no written motions by the plaintiffs requesting additional discovery time or setting forth good cause therefor, subsequent to February 12, 2007.
 

 ¶ 20. The record further shows that the plaintiffs failed to reply to the defendants’ motion to dismiss within the requisite ten-day period provided by Rule 4.03 of the Uniform Rules of Circuit and County Court.
 

 ¶ 21. Based on our review of the record in this case, we find that the record substantially supports the trial court’s finding of dilatory conduct on the part of the plaintiffs. Whether the plaintiffs’ failure to timely engage in discovery, as claimed by the plaintiffs’ counsel, was unintentional is of no moment to this Court, for the facts here clearly evince inexcusable delay.
 
 See Hine v. Anchor Lake Prop. Owners Ass’n,
 
 911 So.2d 1001, 1005(¶14) (Miss.Ct.App.2005) (noting that the test for dismissal under Rule 41(b) does not require contumacious conduct; rather, the test is whether there is a showing of delay
 
 or
 
 contumacious conduct). While there may be instances where delay, under the circumstances, may be excusable, we can say unequivocally that the asserted reason for the delay as stated by counsel for the plaintiffs, which he attributed to staffing difficulties at his law office and his having other trials to contend with, warrants no such consideration.
 
 Cf. Cox,
 
 976 So.2d at 875 (¶¶ 20-21) (supreme court suggests that circumstances such as ongoing settlement negotiations and efforts to substitute counsel may constitute excusable delay). In the case at bar, counsel’s mistaken belief that someone from his law office had timely answered the defendants’ propounded discovery and filed the plaintiffs’ own discovery requests, constitutes — at the very least-delay by negligent omission.
 
 See e.g. Hine,
 
 911 So.2d at 1007(¶25) (Affirming the trial court’s decision to dismiss the plaintiffs’ case with prejudice for failure to prosecute, we expressly disagreed with the assertion that the plaintiffs’ delay was intentional, finding rather that the plaintiffs’ failure to prosecute their case was due primarily to unfortunate and external personal circumstances, which nevertheless constituted inexcusable delay— albeit “by omission, [rather than] commission.”).
 

 ¶ 22. Likewise, we find no merit to the plaintiffs’ argument that the defendants should have been required to seek an order compelling discovery. The plaintiffs rely on
 
 Caracci v. International Paper Co.,
 
 699 So.2d 546 (Miss.1997), for support of their proposition that when the issue truly involves failure to answer discovery, our rules of civil procedure require that the defense first file a motion to compel such discovery before filing a motion to dismiss.
 

 
 *250
 
 ¶ 23. The plaintiffs’ dependence on Car-aca, however, is misplaced.
 
 Caracci
 
 dealt with whether a plaintiffs failure to furnish a sworn answer to an expert interrogatory warranted the exclusion of testimony from the plaintiffs expert witness at trial, even though the defendant made no pre trial motions with regard to the alleged deficiency.
 
 Id.
 
 at 547 (¶¶ 2-7).
 
 Caracci
 
 is readily distinguishable from the instant case in that
 
 Caracci
 
 involved an “improper discovery” response to a particular interrogatory; thus, the discovery deficiency fell under the provisions of Rule 37(a) of the Mississippi Rules of Civil Procedure.
 
 Id.
 
 (Emphasis added). Rule 37(a)(2) states in part, that: “If a ... party fails to answer an interrogatory submitted under Rule 33, ... the discovering party may move for an order compelling an answer[.]” The plain and unambiguous language of Rule 37(a)(2), clearly contemplates circumstances where at least some discovery response already has been provided.
 

 ¶ 24. Here, however, we do not have at issue a partial discovery violation, but rather a total failure on the part of the plaintiffs to respond to any of the defendants’ propounded interrogatories. As such, we find Rule 37(d) applicable.
 

 ¶ 25. In
 
 Palmer v. Biloxi Regional Medical Center, Inc.,
 
 564 So.2d 1346, 1367 (Miss.1990), our supreme court addressed Rule 37(d), and noted as follows:
 

 Under Rule 37(d), “[i]f a party ... fails ... to serve answers- or objections to interrogatories ... after proper service of interrogatories ... the court in which the action is pending on motion may ... take any action authorized under ... this
 
 rule”
 
 — including
 
 dismissal of the suit.
 

 (Emphasis added). The
 
 Palmer
 
 court also said that: “A judge may ... impose a sanction of
 
 dismissal
 
 — absent
 
 a court order.” Id.
 
 at 1368 (citing
 
 Kilpatrick v. Miss. Baptist Med. Ctr.,
 
 461 So.2d 765, 767 (Miss.1984)).
 

 ¶ 26. We find no authority expressed either in the rules of civil procedure or in controlling case law that mandates that a party must first seek a motion to compel as a precondition to seeking a remedy for a discovery violation falling under the purview of Rule 37(d). For us to accept the plaintiffs’ argument on this point and so hold in this case would eviscerate the purpose behind Rule 33 — the timely exchange of interrogatories. This we cannot do.
 

 ¶ 27. Moreover, the defendants in this matter did not move to dismiss under Rule 37; rather, they sought and were granted a Rule 41(b) dismissal. We find the recent decision from our supreme court in
 
 Hillman v. Weatherly,
 
 14 So.3d 721, 727(¶ 22) (Miss.2009) directly on point:
 

 Hillman admits that delay occurred, but she argues, without citation to precedent, that Weatherly should have filed a motion to compel discovery responses. However, when assessing the propriety of a Rule 41(b) dismissal, the Court consistently has applied the test enunciated in
 
 American Telephone and Telegraph Company v. Days Inn of Winona,
 
 720 So.2d at 181[.] ... This test focuses on the plaintiffs conduct, not on the defendant’s efforts to prod a dilatory plaintiff into action.
 

 ¶ 28. Accordingly, we find that the trial court did not abuse its discretion in finding dilatory conduct on the part of the plaintiffs in prosecuting their case.
 

 B. Lesser Sanctions
 

 ¶ 29. We next must consider whether the trial court erred in the consideration of lesser sanctions. Lesser sanctions have been held to include “fines, costs, or damages against plaintiff or his
 
 *251
 
 counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings.”
 
 Miss. Dep’t of Human Servs. v. Guidry,
 
 830 So.2d 628, 633(¶ 16) (Miss.2002) (quoting
 
 Am. Tel. & Tel.,
 
 720 So.2d at 181-82 (¶ 17)).
 

 ¶ 30. The trial court need not make a showing that lesser sanctions would not suffice.
 
 Hine,
 
 911 So.2d at 1005 (¶ 17). “When a trial judge does not make specific findings of fact, we will ‘assume that the trial judge made all findings of fact that were necessary to support his verdict.’ ”
 
 Id.
 
 (quoting
 
 Watson,
 
 493 So.2d at 1279). However, where there is no indication in the record that the trial court considered lesser sanctions, our appellate courts are less likely to uphold a Rule 41(b) dismissal.
 
 Cox,
 
 976 So.2d at 876 (¶ 24) (citations omitted). Consideration of lesser sanctions cannot be presumed from a silent record.
 
 Id.
 
 at n. 10. A showing that lesser sanctions were argued before the trial court is sufficient.
 
 Id.
 
 at (¶ 25).
 

 ¶ 31. At the hearing, counsel for the defendants argued that due to the plaintiffs’ failure to timely engage in discovery, his clients would be unable to adequately defend themselves against the plaintiffs’ negligence claim. The primary basis for this argument was that the nurse, who had allegedly told Marguerite that additional blood work would not be necessary, remained unidentified from October 2004, when the alleged representation occurred, until May 2008, when the plaintiffs eventually responded to the defendants’ interrogatories and identified the nurse as “Roxanne.” This, according to the defendants, not only forestalled their ability to properly investigate the matter themselves, but it denied them the opportunity to test and determine the recollection of a key material witness. Thus, it was their contention that no sanction other than dismissal with prejudice would suffice to cure the prejudice caused by the plaintiffs’ failure to timely prosecute their case.
 

 ¶ 32. Counsel for the plaintiffs argued, however, that since the allegation was fairly well set out in the complaint, and because the defendants would know who was working for them at the Orange Grove clinic when the representation was allegedly made to Marguerite, they could have inquired into whether such a conversation had occurred.
 

 ¶ 33. The trial judge agreed with the plaintiffs on this point insofar as that if the date of the incident was known to the defendants then they would likely know who was working at the clinic at the time, and would have been able to make an investigation into whether or not such a conversation took place. However, the trial judge immediately expressed that such an outlook “causes [the defendants] to have the burden of proving the case for someone.”
 

 ¶ 34. The trial judge asked counsel for the plaintiffs what he thought would be an appropriate sanction in this matter if the case was not dismissed. In response, counsel first acknowledged that such a decision was for the trial court to make, but then suggested that a warning would be an appropriate measure in this case.
 

 ¶ 35. The trial judge rejected counsel’s request, stating: “What’s the purpose of giving a warning? Everybody is supposed to know the rules.”
 

 ¶ 36. As the record shows, both parties presented arguments to the trial court with regard to lesser sanctions. Thus, we cannot say that lesser sanctions were not considered by the trial judge in his ruling.
 
 Cox,
 
 976 So.2d at 876(¶24);
 
 Hine,
 
 911 So.2d at 1005 (¶ 17).
 

 ¶ 37. Nevertheless, the facts in this matter do not support the trial court’s
 
 *252
 
 decision to dismiss this case with prejudice. According to our supreme court, lesser sanctions will not suffice where they cannot cure prejudice suffered by a defendant from a plaintiffs delay in prosecuting his or her case.
 
 Cox,
 
 976 So.2d at 876 (¶ 26). Even where there is no evidence of actual prejudice to the defendants, prejudice may be presumed from unreasonable delay; however, the preference for a decision on the merits must be weighed against any such presumption.
 
 Id.
 
 at 879 (¶ 44).
 

 ¶ 38. Apart from the delay itself, the only evidence presented by the defendants in support of their charge of prejudice was the fact that the plaintiffs had failed to identify the alleged nurse in a timely manner. How much, if any, actual prejudice this caused the defendants, we cannot say. Because discovery was not completed in this case, granted due to no fault of the defendants, there is scant evidence contained in the record which sufficiently supports a judicial finding of actual prejudice. Thus, we are left solely with the question of whether the prejudice presumably suffered by the defendants as a result of the plaintiffs’ inexcusable delay in this matter, in and of itself, outweighs the law’s preference for a decision on the merits.
 
 See id.
 
 Based on the attendant circumstances of this case, we find that it does not.
 

 ¶ 39. First, much is made regarding the fact that the defendants were without the identity of the nurse. However, negligence based on the theory of respondeat superior was but one act of negligence asserted by the plaintiffs in this case.
 
 [5]
 
 If the defendants were prejudiced simply because they were without the identity of the alleged nurse, the trial court had authority to remedy such prejudice by striking this portion of the pleadings, rather than dismissing the plaintiffs’ entire case with prejudice.
 

 ¶ 40. Second, there is no indication that the delay in this matter was due to any of the aggravating factors described by the supreme court in
 
 American Telephone and Telegraph Company,
 
 720 So.2d at 181 (¶ 13). The plaintiffs’ failure to timely engage in discovery appears to be attributable solely to the unintentional yet negligent conduct of their counsel. Certainly, clients may be held accountable for their attorney’s conduct.
 
 See, e.g., Cox,
 
 976 So.2d at 877 (¶ 29) (finding that the plaintiff bore some responsibility for the almost nine-year period in which the case lay dormant) (citation omitted). Yet, we must also bear in mind what the supreme court reiterated in
 
 American Telephone and Telegraph Company:
 
 “The theme running through the cases involving Rule 41(b) is that negligence or inexcusable conduct on the part of plaintiffs counsel does not in itself justify dismissal with prejudice.”
 
 Am. Tel. & Tel.
 
 720 So.2d at 182 (¶20) (citation omitted). Indeed, the record strongly suggests that it was the plaintiffs themselves who were responsible for the last action(s) taken in this matter before the defendants filed their Rule 41(b) motion. At the hearing, counsel for the plaintiffs indicated that he had sought to schedule the deposition of Dr. Benefield after the plaintiffs came into his office and inquired about the status of their case.
 

 ¶ 41. When this fact is taken into consideration together with the fact that there is no clear record of actual prejudice caused to the defendants, or even that of presumptive prejudice, we find that the trial court erred in its decision to dismiss the plaintiffs’ case with prejudice.
 

 ¶ 42. Therefore, we remand this matter back to the trial court for further proceed
 
 *253
 
 ings consistent with this opinion. However, we make clear that, due to the record of inexcusable delay in this matter, upon remand the trial court may impose such reasonable sanctions, short of dismissal with prejudice, on the plaintiffs or their attorney as the court may find appropriate.
 
 See id.
 
 Also, pursuant to the discretionary authority granted to this Court pursuant to Rule 36 of the Mississippi Rules of Appellate Procedure, we find it proper that the appellants should bear the costs of this appeal.
 

 ¶ 43. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY. ISHEE, J., NOT PARTICIPATING.
 

 [1]
 

 . The record does not provide Dr. Shah's full name.
 

 [2]
 

 . In their answer, the defendants admitted that Marguerite had an appointment scheduled with Dr. Shah for October 15, 2004, but they disputed that Marguerite had a follow-up appointment scheduled for blood work to be performed at the Orange Grove clinic on October 13.
 

 [3]
 

 . According to the complaint, the plaintiffs would show the following acts of negligence:
 

 (1)Defendants negligently failed to monitor and adjust Marguerite's Coumadin therapy, which resulted in her becoming over anti-coagulated and caused her to suffer the hemorrhagic stroke;
 

 (2) Orange Grove is responsible for the negligent acts of its employees, based on the theory of respondeat superior;
 

 (3) Orange Grove was negligent in failing to have a reasonable protocol in place to prevent over anti-coagulation in a patient such as Marguerite;
 

 (4) The nurse employee/employees of Orange Grove was/were negligent in not performing a follow-up anti-coagulation study on October 13, 2004, Marguerite's
 
 *247
 
 return visit, and/or failed to discuss the matter with a physician;
 

 (5)Orange Grove and Dr. Benefield were negligent in not having an adequate system for monitoring Coumadin therapy and/or having studies performed locally and test results immediately available for the physicians’ review and reaction to increasing anti-coagulation, placing a patient at unnecessarily increased risk of stroke;
 

 (6) Defendants Does one through five, whose identities are unknown at this time, are guilty of such acts of negligence, which are, at present, unknown to Plaintiffs, but may be discovered during trial preparation of this case;
 

 (7) Defendants, collectively, are guilty of such other acts of negligence as may be discovered during trial preparation of this case.
 

 [4]
 

 . Counsel for the plaintiffs told the trial court that the delays were due to staffing difficulties at his law office along with his having had other trials to contend with; counsel said he thought discovery had been timely answered by someone in his office.
 

 [5]
 

 .
 
 See
 
 footnote 3.