# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00231-COA

DAVID TISDALE AND TERESA TISDALE        APPELLANTS

v.

SOUTH CENTRAL REGIONAL MEDICAL        APPELLEE
CENTER

| | |
|---|---|
| DATE OF JUDGMENT: | 03/15/2022 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANTS: | DOUGLAS LAMONT TYNES JR. |
| ATTORNEYS FOR APPELLEE: | RICHARD O. BURSON |
| | PEELER GRAYSON LACEY JR. |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 10/29/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**WESTBROOKS, J., FOR THE COURT:**

¶1. David and Teresa Tisdale (the Tisdales) filed a medical malpractice suit against the South Central Regional Medical Center (SCRMC) in the Jones County Circuit Court. The circuit court dismissed the claim for failure to prosecute after finding an inexcusable delay by the Tisdales. The Tisdales appeal this involuntary dismissal alleging that the circuit court abused its discretion by analyzing a Rule 41(b) motion and failing to consider the clear record of attempted prosecution. *See* M.R.C.P. 41(b). Alternatively, the Tisdales argue the court should have reviewed the matter under Rule 37 for discovery sanctions. *See* M.R.C.P. 37. After a review of the record, we affirm the circuit court's decision.

**FACTS AND PROCEDURAL HISTORY**

¶2. This appeal stems from the circuit court's dismissal of the Tisdales' medical malpractice claims for failure to prosecute under Rule 41(b). The underlying medical facts are not necessarily material to the issues before this Court; however, the timeline and participants in the medical care at issue are relevant to our analysis. The Tisdales' medical negligence claims arose out of medical care provided to Mr. Tisdale in the SCRMC emergency department on October 7, 2017, and October 13, 2017. Mr. Tisdale alleged that Dr. Michael Larochelle and Dr. Mark Kelly, both of whom were emergency-medicine physicians employed by SCRMC at the time, failed to diagnose liver masses during Mr. Tisdale's visits to the SCRMC emergency department. After leaving SCRMC on the morning of October 13, 2017, Mr. Tisdale went to the emergency department at Merit Health Wesley in Hattiesburg, and his liver masses were diagnosed later that morning. Mr. Tisdale remained hospitalized at Merit Health Wesley until his discharge on October 25, 2017, and was unable to work in gainful employment for several weeks. Teresa Tisdale, David Tisdale's wife, joined this suit seeking compensation for the value of the lost care and services of her husband and the value of care and services provided to her husband during this period of illness and recovery.

¶3. SCRMC denies any allegation that its employees breached the standard of care applicable to Mr. Tisdale or proximately caused his alleged injuries. SCRMC's position is that at all times relevant, its agents, servants, and employees met or exceeded the standard

2

of care applicable to Mr. Tisdale. Further, SCRMC alleges that an earlier diagnosis of Mr. Tisdale's liver masses while in the SCRMC emergency department would not have provided him with a greater-than-50% chance of a substantially better outcome.

¶4. The complaint was timely filed within the statute of limitations by the Tisdales' initial attorney on the case, F.M. Turner, on March 28, 2019. SCRMC filed its answer on July 18, 2019. SCRMC propounded discovery on August 21, 2019. On March 13, 2020, the President of the United States declared a national emergency due to the outbreak of Coronavirus (COVID-19). On the same day, the Mississippi Supreme Court issued an Emergency Administrative Order relating to COVID-19, urging courts to limit in-person contact as much as possible but granting each judge the authority to determine the manner in which necessary in-person proceedings were to be conducted. Emergency Administrative Order, *In re Emergency Order Related to Coronavirus (COVID-19)* ("EAO"), No. 2020-AD-00001-SCT, at 1-2 (Miss. Mar. 13, 2020). Another emergency order stated that "[a] case involving an attorney or party who is ill or in a high-risk category shall be rescheduled." EAO-5, No. 2020-AD-00001-SCT, at 4 (Miss. Mar. 20, 2020).

¶5. Turner wrote a letter to the Tisdales on April 2, 2020, informing them that he would be terminating his representation of them on July 31, 2020, but would be seeking new legal representation for them. On August 26, 2020, Turner filed a formal motion to withdraw as counsel, stating as the reason: "Movant is 69 years of age and has underlying health conditions that place him at high risk for complications from Covid-19, the disease caused

by the novel coronavirus co-SARS-2." The circuit court granted this motion to withdraw on August 28, 2020.

¶6.     Robert Williamson entered his appearance for the Tisdales on October 12, 2020, followed by Douglas Tynes' also filing an entry of appearance on October 16, 2020. The next action in this case was on April 29, 2021, when Williamson filed a "Notice of Change of Address." After not receiving any response to SCRMC's "Interrogatories and Requests for Production of Documents" that was filed on August 21, 2019, almost two years later on August 5, 2021, SCRMC filed its motion to dismiss for failure to prosecute. On August 13, 2021, the Tisdales finally filed a notice of service of their responses to the interrogatories and requests for production. On August 16, 2021, the Tisdales filed their response in opposition to the motion to dismiss. On March 15, 2022, the circuit court granted SCRMC's motion to dismiss for failure to prosecute after finding that there was "a clear record of delay by the Plaintiffs." On March 25, 2022, the Tisdales filed a motion to alter or amend the judgment. The hearing for this motion was initially scheduled for September 19, 2022, but was rescheduled for the circuit court's next available hearing date, which was January 17, 2023. After the hearing, on January 31, 2023, the circuit court entered its order denying the Tisdales' motion.

## STANDARD OF REVIEW

¶7.     We will reverse "a trial court's dismissal for failure to prosecute pursuant to Rule 41(b) . . . only if [we] find[] the trial court abused its discretion." *Leasy v. SW Gaming LLC*,

4

335 So. 3d 555, 557 (¶6) (Miss. 2022). "The reviewing court should not reverse a discretionary finding by the lower court unless it comes to a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." *Id.* at 558 (¶6) (internal quotation mark omitted). In particular, "[a] finding of abuse of discretion absent a definite and firm identification of clear error violates time-honored standard-of-review principles." *Id.* (internal quotation mark omitted). In applying "the applicable abuse-of-discretion standard of review," this Court may not "reweigh[] the evidence [or] substitut[e] its judgment for that of the trial court." *Id.* at 560 (¶13). Questions of law are reviewed de novo. *Stephens v. Equitable Life Assur. Soc'y of U.S.*, 850 So. 2d 78, 82 (¶10) (Miss. 2003).

## DISCUSSION

### I.     Rule 37

¶8.     SCRMC filed a motion to dismiss for failure to prosecute pursuant to Rule 41 of the Mississippi Rules of Civil Procedure. The Tisdales argue that the circuit court should have instead applied Rule 37 to the matter. They allege, "[T]he record clearly shows that there were actions taken by the Tisdales," and the court failed to consider their attempts to prosecute the case.

¶9.     The Tisdales allege that their failure to answer SCRMC's interrogatories and requests for production of documents was a discovery dispute, not grounds for dismissal. Rule 37(a) of Mississippi Rules of Civil Procedure states:

5

> A party, upon reasonable notice to other parties and all persons affected thereby, *may* apply for an order compelling discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make discovery in an effort to obtain it without court action.

M.R.C.P. 37(a) (emphasis added). At trial, the Tisdales argued that SCRMC should have contacted them to seek responses for discovery. However, our supreme court has held in instances when "[the defendant] did not file a motion to compel [the plaintiff's] responses to its outstanding discovery does not weigh in [the plaintiff's] favor, as the test regarding a clear record of delay focuses on a plaintiff's conduct, not on the defendant's efforts to prod a dilatory plaintiff into action." *Manning v. King's Daughters Med. Ctr.*, 138 So. 3d 109, 116 (¶21) (Miss. 2014). According to Rule 37, SCRMC could have applied, but was not required to, for an order compelling discovery from the Tisdales because the determination of delay is based on the plaintiff's conduct, not the efforts of the defendant to get the plaintiffs to respond. Thus, the circuit court correctly applied Rule 41 pursuant to SCRMC's motion to dismiss.

## II. Rule 41

¶10. Rule 41(b) of the Mississippi Rules of Civil Procedure states that "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him." M.R.C.P. 41(b). Our supreme court has held that a Rule 41(b) dismissal may be upheld "when there is: (1) a record of dilatory or contumacious conduct by the plaintiff; and (2) a finding by this Court that lesser

6

sanctions would not serve the interests of justice. Additional 'aggravating factors' or actual prejudice may bolster the case for dismissal, but are not requirements." *Holder v. Orange Grove Med. Specs. P.A.*, 54 So. 3d 192, 197 (¶18) (Miss. 2010).

### A.     Clear Record of Delay

¶11.    The first prong for a Rule 41(b) dismissal is that there must be a record of dilatory or contumacious conduct by the plaintiff. However, our supreme court has held that "[w]hen there is a clear record of delay, no showing of contumacious conduct is necessary," and "'delay alone may suffice' for a dismissal pursuant to Rule 41(b)." *Id.* at 199 (¶¶25-27). In this case, the circuit court judge correctly found the Tisdales' period of inactivity was a clear record of delay.

¶12.    In the order granting SCRMC's motion to dismiss for failure to prosecute, the circuit court stated that "the Plaintiffs have not taken any substantive action in this cause for over two (2) years, since filing their Complaint on March 28, 2019," and thus found "insufficient justification for delay." The Tisdales argue that there was not a clear record of delay and that the court miscalculated the delay because the actions that were taken do not constitute what the United States Court of Appeals for Fifth Circuit has held to be "significant periods of total inactivity." *Morris v. Ocean Sys. Inc.*, 730 F.2d 248, 252 (5th Cir. 1984).

¶13.    Our precedent holds "that motions to dismiss for failure to prosecute are considered on a case-by-case basis." *Havard v. Sumrall*, 250 So. 3d 1282, 1289 (¶22) (Miss. Ct. App. 2017) (citing *Holder*, 54 So. 3d at 197 (¶17)).

¶14. In *Holder*, the defendant submitted an answer and defenses to the plaintiffs' complaint along with interrogatories and requests for production of documents approximately two months after the complaint was filed. *Holder*, 54 So. 3d at 195 (¶6). After not receiving a response to the discovery requests for approximately three months, the defendant sent correspondence to the plaintiffs inquiring when responses would be completed. *Id*. at (¶8). Almost three weeks later, the plaintiffs' counsel provided the defendant with an "Authorization to Disclose, Release and Furnish Protected Health Information" but still did not respond to the discovery requests. *Id*. Two days later, the defendants' counsel re-faxed the first "inquiry about completion of discovery to plaintiffs' counsel, and did so again [almost two weeks later]. According to the defendants, each request was ignored." *Id*. at 196 (¶9).

¶15. "Approximately one year later, . . . plaintiffs' counsel sent a letter to defendants' counsel requesting to take [a] deposition. Two days later, while still not having answered the defendants' discovery, plaintiffs' counsel filed interrogatories and requests for production of documents." *Id*. at (¶10). Two days after the plaintiffs filed their discovery requests, "the defendants filed a motion to dismiss for failure to prosecute, citing in part the plaintiffs' failure to answer discovery." *Id*. Approximately two weeks after the defendants filed a motion to dismiss, the plaintiffs filed answers to the discovery requests that had been propounded by the defendants over fifteen months earlier. *Id*. at (¶11). The trial court in that case held that "the delays in responding to discovery and not pursuing the case as it should

8

have been for this period of time is certainly sufficient for the [c]ourt to deem that the case was not pursued properly; that it should be dismissed for failure to prosecute the case." *Id.* at (¶12). Accordingly, the supreme court affirmed the circuit court's decision. *Id*. at (¶34).

¶16. In *Manning*, the supreme court affirmed the circuit court's Rule 41(b) dismissal following the plaintiff's two-year delay in responding to discovery. *Manning*, 138 So. 3d at 119 (¶31). The supreme court observed that "the fact that [the defendant] did not file a motion to compel [the plaintiff's] [discovery] responses . . . does not weigh in [the plaintiff's] favor, as the test regarding a clear record of delay focuses on a plaintiff's conduct, not on the defendant's efforts to prod a dilatory plaintiff into action." *Id.* at 116 (¶21). The supreme court ultimately held, "[O]ur rules and precedent make clear that a motion to compel is not a prerequisite to a motion to dismiss when, as here, there is a total failure of a party to participate in discovery." *Id.* at 118 (¶30); *see Hillman v. Weatherly*, 14 So. 3d 721, 727 (¶22) (Miss. 2009) (rejecting plaintiff's argument that dismissal was improper because the defendant had not filed a motion to compel outstanding discovery and recognizing that "when assessing the propriety of a Rule 41(b) dismissal . . . the test focuses on the plaintiff's conduct, not on the defendant's efforts to prod a dilatory plaintiff into action").

¶17. Similarly, the supreme court also recently reversed this Court's decision and affirmed a circuit court's Rule 41(b) dismissal, finding that the plaintiff's two-year delay in responding to discovery constituted "an undeniably clear record of delay in prosecuting the case, which alone is sufficient to warrant a dismissal." *Leasy v. SW Gaming LLC*, 335 So. 3d 555, 559

9

(¶11) (Miss. 2022).

¶18.    In the case currently before this Court, the Tisdales argue that the circuit court erred in finding a clear record of delay and miscalculated the delay, if any, by disregarding certain activity in the case.  The circuit court calculated the delay from March 28, 2019, when the Tisdales filed their complaint, to August 13, 2021, when the Tisdales filed their notices of service of responses to discovery requests.  In the order granting the dismissal, the circuit court stated that "the Plaintiffs have not taken any substantive action in this cause for over two (2) years, since filing their Complaint on March 28, 2019," and, thus, found "insufficient justification for delay."

¶19.    The Tisdales' initial attorney (Turner) sent the Tisdales a letter on April 2, 2020, after the start of the pandemic, informing them he would be withdrawing his representation at the end of July 2020 due to health concerns.  Turner did not file a motion with the court to withdraw his representation until August 26, 2020, leaving Turner responsible for the Tisdales' case in the circuit court for almost five months before he requested leave to withdraw as counsel of record.  Although Turner obtained new legal counsel for the Tisdales during these five months, Turner did nothing during this time to advance the case in any way. Evidence was later presented that Turner had made handwritten answers on the interrogatories that had been propounded to the Tisdales, yet he did not return any of these documents to SCRMC.

¶20.    The Tisdales assert that the court ignored activity in the record that occurred on

October 12, 2020; October 16, 2020; and April 29, 2021. The "activity" that the Tisdales reference on these dates are the entries of appearance by both of the two new lawyers and the Notice of Change of Address, which the Tisdales argue should have been considered by the circuit court as advancements of the case. But as we have previously stated, in accord with the advisory committee's note to Rule 41, "an action of record has been characterized as one that 'advance[s] the case to judgment.' Pleadings, discovery requests, and deposition notices are 'actions of record.'" *Glass v. City of Gulfport*, 271 So. 3d 602, 604 (¶10) (Miss. Ct. App. 2018) (citation omitted).

¶21. It could be argued that the entries of appearance by the new lawyers, Williamson and Tynes, could be considered as advancements of the case because it is action taken by the Tisdales to ensure that their case does not sit idly while changing counsel of record. However, that would not be the case here because even after new counsel appeared, there were six additional months of delay before Williamson filed the Notice of Change of Address. Not including this notice, there was no activity from the Tisdales for a total of ten months after the new lawyers took over the case. Therefore, neither the entries of appearance nor the Notice of Change of Address should be considered when calculating the delay.

¶22. In *Holder*, the defendants reached out to the plaintiffs three times after propounding discovery in attempt to receive a response. *Holder*, 54 So. 3d at 195-96 (¶¶8-10). The plaintiffs continued to submit other documents to the defendants yet still failed to respond to the discovery requests. *Id*. at 196 (¶10). In the current case, SCRMC reached out to the

11

Tisdales twice inquiring when to expect a response to their discovery requests. Also, Williamson and Tynes were not producing any additional documents to further the case as the counsel did in *Holder*. The only documents filed during the calculated period of inactivity were Williamson's and Tynes' entries of appearances when they first received the case, and then approximately six months later, the Notice of Change of Address was filed. As explained above, these activities did not amount to advancing the case toward judgment. Therefore, we find that the circuit court did not miscalculate the delay.

¶23. The Tisdales did not attempt to respond to discovery requests until after SCRMC filed a motion to dismiss for lack of prosecution. The circuit court stated in the order granting the dismissal that "[t]he Plaintiffs' action in finally responding to discovery was reactionary to the Motion to Dismiss." *See Holder*, 54 So. 3d at 198 (¶22) (observing that in assessing whether a Rule 41(b) dismissal is warranted, a court may consider whether action taken by the plaintiff was "reactionary" to a threat of dismissal "or whether the activity was an effort to proceed in the litigation"). For these reasons, the circuit court found there was "insufficient justification for the delay" in this case.

¶24. Further, the Tisdales assert that the COVID-19 pandemic caused an excusable delay that the circuit court should have considered. The Tisdales filed their complaint in March 2019, and SCRMC filed its answer in July 2019. Again, on March 13, 2020, "the President of the United States declared a national emergency due to the outbreak of [COVID-19]." EAO, No. 2020-AD-00001-SCT, at 1 (Miss. Mar. 13, 2020). On the same day, the

12

Mississippi Supreme Court issued its first Emergency Administrative Order. *Id*. At this point the Tisdales had already accumulated a twelve-month period of no activity in their case.

¶25. Our supreme court "delineated 'certain emergency actions' and 'guidelines' to be taken by 'all the courts of the state' in light of the COVID-19 pandemic." *Scott v. UnitedHealthcare of Miss. Inc.*, 374 So. 3d 1270, 1273-74 (¶5) (Miss. Ct. App. 2023) (quoting EAO, No. 2020-AD-00001-SCT, at 1 (Miss. Mar. 13, 2020)). Although the order provided that "[c]ourts should consider the avoidance of any proceedings that involve vulnerable persons or require witnesses or parties to travel from an infected area," the order also explicitly provided that "[i]n compliance with the Constitution, all state courts—municipal, justice, county, chancery, circuit, and appellate courts—will remain open for business to ensure courts fulfill their constitutional and statutory duties." *Id.* Subsequent EAOs issued by the supreme court relating to COVID-19 consistently reiterated that the Mississippi courts were to "remain open and accessible." *Scott*, 374 So. 3d at 1273-74 (¶5) (citing EAO-27, No. 2020-AD-00001-SCT, at 1 (Miss. Jan. 27, 2022)).

¶26. Likewise, the supreme court's order recognized "the trial courts' discretionary authority to control their general dockets as the individual judges saw fit. *See, e.g.*, [EAO-14], No. 2020-AD-00001-SCT, at 4 (¶3) (Miss. July 23, 2020)." *Scott*, 374 So. 3d at 1273-74 (¶5). To this end, the supreme court encouraged the use of "technologies, including electronic filing, teleconferencing and videoconferencing" to ensure that court proceedings remained ongoing. *See, e.g.*, EAO-5, No. 2020-AD-00001-SCT, at 2 (¶1) (Miss. Mar. 20,

13

2020).

¶27. In *Scott*, this Court affirmed a Rule 41(d) dismissal for failure to prosecute. In reaching this determination, this Court rejected COVID-19 as an excuse for the delay at issue in that case. *Scott*, 374 So. 3d at 1278-79 (¶¶34-38). We recognized, as we do here, that throughout the pandemic, the courts were never closed, the practice of law continued, and the supreme court, in its EAOs, recognized the various forms of communication available to allow cases to progress, such as "technologies, including electronic filing, teleconferencing, and videoconferencing." *Id.* at 1279 n.9.

¶28. This Court acknowledges that these technologies were available to the Tisdales, through counsel, to propound discovery on the Tisdales' part, conduct depositions, communicate with the circuit court via the Mississippi Electronic Courts System (MEC) or SCRMC's counsel if additional time was necessary to serve or respond to discovery, or generally move their lawsuit forward. If COVID-19 became a problem for either attorney or the Tisdales, a motion seeking a stay or other relief could have been filed via MEC, but no activity in this regard took place.

¶29. The dissent believes that the two-year period of delay made an unfair decision by the circuit court because of the effects of the pandemic. This Court is aware of the effects and impacts of the pandemic. It was unprecedented and caused attorneys and courts to find innovative ways to manage their practices and dockets, respectively. As a result, some courts remained physically completely open and operable, while others handled cases more

14

remotely. We surely have not put our heads in the sand where COVID-19 is concerned; also, we do not believe that these effects were an excusable delay considering the totality of the circumstances at hand.

¶30. The Tisdales' first attorney, Turner, withdrew as counsel for the Tisdales due to an underlying health condition that might have put him at risk during the pandemic. However, discovery was propounded six months prior to the pandemic declared in March 2020. Turner did not formally request the court's permission to withdraw from the case until August 2020. The record is devoid of any doctor's excuse or records that could have substantiated Turner not filing a motion sooner or propounding discovery — which did not require direct, in-person contact. Furthermore, we cannot overlook the second set of attorneys, Williamson and Tynes, who also did nothing to advance the case. Williamson and Tynes took on the case in October 2020 yet did not file a response to discovery until August 2021 — eight days after SCRMC moved to dismiss for lack of prosecution. Nothing in the record indicates the Tisdales, at any point, could not have responded to discovery requests.

¶31. A similar issue arose in a recent case from this Court, and we held that the circuit court did not abuse its discretion by dismissing a case because there was a clear record of delay. *Wren v. Zellers*, 390 So. 3d 1011, 1017 (¶15) (Miss. Ct. App. 2024). Similarly, the plaintiffs tried to argue that the effects of COVID-19 caused an excusable delay. The plaintiffs filed a complaint alleging negligence and seeking damages against Zellers. Discovery ensued with the Wrens propounding interrogatories and requests for production

of documents to Zellers on February 1, 2019. *Id*. at 1013 (¶2). On February 21, 2019,

Zellers sent the same discovery requests to the plaintiffs. *Id*. In May 2019, Zellers filed a

motion to compel and noticed it for a hearing. *Id*. at (¶3). In August 2019, the Wrens filed

notice of their service of their responses to Zellers's discovery requests, and as a result, the

hearing on the motion to compel was canceled. *Id*. At that time, the Wrens also filed a

designation of experts. Below are the remaining facts from the *Wren* opinion:

> On May 4, 2021, the circuit court clerk filed a motion to dismiss the Wrens'
> case "for want of prosecution pursuant to Rule 41(d)(1) of the Mississippi
> Rules of Civil Procedure" because there had been no action on the record in
> the preceding twelve months. On June 4, 2021, the Wrens filed a notice to
> offer self-authenticating medical records "prepared by Flexworx, its
> employees, physicians and nurses[.]" On January 3, 2022, the Wrens each filed
> a notice to take a video deposition of one of their treating physicians, Dr.
> Oakley Jordan, on January 24, 2022. However, on January 12, 2022, the Wrens
> filed a re-notice to take Dr. Jordan's video deposition on February 11, 2022.
> The deposition was to occur in Memphis, Tennessee. On the day of the
> scheduled deposition, the Wrens canceled it about "an hour and fifteen minutes
> before" it was to start. According to the Wrens, the cancellation was necessary
> because they learned that Tomekicia had been in a car wreck six months before
> the instant accident, which would potentially affect the case. The record
> contains communication between the Wrens and Zellers regarding the
> cancellation of the expert deposition.
>
> On July 21, 2022, Zellers filed a Rule 41(b) motion to dismiss the case for lack
> of prosecution. He alleged that the Wrens had "shown a clear record of delay
> in this action" . . . .
>
> On January 18, 2023, the Wrens filed a response to Zellers's previous motion
> to dismiss and contended the case had no "extreme circumstances" that would
> merit a dismissal of the case. On January 19, 2023, a hearing was held on the
> motion to dismiss for lack of prosecution. There, the Wrens expounded on the
> reasoning for the delay citing numerous obstacles such as the COVID-19
> pandemic, changes with Zellers's insurance companies, and motions being
> filed for additional counsel on Zellers's part.

16

*Id*. at 1013-14 (¶¶3-5) (paragraph numbering omitted).

¶32. However, in that case we agreed with the circuit court that the COVID-19 pandemic was an unpersuasive reason for the delay, and we reasoned that because "the circuit judge was explicitly clear that she continued to have litigants appear in person and on Zoom" the delay was inexcusable. *Id*. at 1016 (¶13). In *Wren*, this Court found that there were several periods of time where the plaintiffs took no action in the case. *Id*. at (¶12). They propounded discovery, responded to the discovery requests, and went on to file their designation of experts (which was not included in the defense's motion to compel). *Id*. at 1013 (¶3). While not properly pursued, the Wrens at least filed a notice to take a video deposition before Zellers filed a motion to dismiss for lack of prosecution, and in that instance we held that the trial court did not abuse its discretion and affirmed its decision to dismiss the case. *Id*. at 1017 (¶15). Even though we held there was a clear record of delay in *Wren*, as explained in the facts above, there was more activity taken by the plaintiffs in that case compared to the case sub judice in which no activity was taken.

¶33. The Tisdales' case fairly differs from *Wren* because the only actions taken by the Tisdales from the time the complaint was filed in March 2019 to the time the motion to dismiss was filed by SCRMC in August 2021 were Turner's withdrawal as counsel, Williamson's and Tynes' entries of appearance, and the notice of the change of address. None of these actions necessarily advanced the case to judgment. In its order, the circuit court stated:

17

COVID is not a sufficient justification for Plaintiffs' current counsel to delay responding to Defendant's discovery for another ten (10) months. Indeed, it only took Plaintiffs' counsel eight (8) days to file answers and responses after the Defendant filed its Motion to Dismiss. And, as noted above, the Plaintiffs still have filed no discovery of their own.

Moreover, the Tisdales even admitted in their motion to alter or amend the judgment that the court was never actually closed.

¶34. Thus, we find that the pandemic did not keep the Tisdales from responding to SCRMC's interrogatories and requests for production that was served on August 21, 2019, six months before the pandemic was declared.

¶35. The plaintiffs failed to provide any excusable reasons for the over twenty-four month delay; therefore, we find that the circuit court did not abuse its discretion in granting the motion to dismiss for lack of prosecution.

### B. Lesser Sanctions

¶36. Although we find the trial court did not abuse its discretion, we will address whether lesser sanctions would have better served the interests of justice. Lesser sanctions may include "fines, costs, or damages against plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings." *Cox v. Cox*, 976 So. 2d 869, 879 (¶24) (Miss. 2008) (internal quotation marks omitted). Our supreme court "has never required a trial judge to enumerate each and every lesser available sanction and in turn state why each does not apply." *Regan v. S. Cent. Reg'l Med. Ctr.*, 234 So. 3d 1242, 1247 (¶20) (Miss. 2017). The circuit court heard arguments regarding lesser-

18

sanction proposals during the hearing on SCRMC's motion to dismiss and addressed why lesser sanctions would not be appropriate its order of dismissal. The circuit court stated that given the lengthy delay, the only appropriate sanction was to dismiss the case with prejudice.

¶37.     Other lesser sanctions proposed by the Tisdales' counsel cannot restore faded memories of fact-witnesses and busy medical professionals, who may have either retired or relocated their practices out-of-state. *See Hillman*, 14 So. 3d at 728 (¶25) ("This Court has affirmed a dismissal with prejudice when lesser sanctions could not cure the prejudice to a defendant caused by the delay."); *see also, e.g.*, *Palmer ex rel. Wrongful Death Beneficiaries v. Clark Clinic Inc.*, 271 So. 3d 680, 684 (¶14) (Miss. Ct. App. 2018) (generally recognizing that "[m]emories fade, and facts become incapable of being produced" and, thus, finding even minimal delay can impact judicial proceedings in case in which the "underlying medical-malpractice [case was] over four years old"); *In re Est. of Brewer*, 755 So. 2d 1108, 1114 (¶25) (Miss. Ct. App. 1999) (recognizing "it was . . . helpful that the wrongful death claim be diligently pursued[;] . . . [o]therwise[,] . . . [w]itnesses could be lost or their memories fade . . . [, and] [u]ngathered physical evidence could be destroyed or lost").

¶38.     Accordingly, the circuit court held that "any sanctions less than dismissal with prejudice would not serve the interest of justice." The issue is not whether we would have made the same decision but only whether the circuit court abused its discretion. In this instance, we do not find that the circuit court abused its discretion in making its decision, therefore satisfying the second prong of dismissal under Rule 41(b).

## C.     Aggravating Factors or Actual Prejudice

¶39.    The final issue to address in a Rule 41 motion to dismiss is prejudice or the presence of any aggravating factors. "The trial court *may* consider prejudice or the presence of an aggravating factor, and these considerations may help to bolster or strengthen a defendant's case in support of dismissal. These considerations, however, are not a prerequisite to dismissal under Rule 41(b)." *Holder*, 54 So. 3d at 199 (¶27) (emphasis added).

¶40.    Actual prejudice is not a requirement for dismissal under Rule 41(b); however, prejudice may be presumed from unreasonable delay. *Id*. at 199 (¶28) (citing *Cox*, 976 So. 2d at 879 (¶44)). "Actual prejudice may arise when, because of the delay, witnesses become unavailable or the memories of witnesses fade." *Id*. at 200 (¶30). Even when a defendant fails to present evidence of witnesses' fading memories, our supreme court has held that "delay alone may result in presumed prejudice to the defendant." *Id*.

¶41.    In *Leasy*, the circuit court dismissed the plaintiff's lawsuit with prejudice pursuant to Rule 41(b) following a two-year delay in responding to the defendant's discovery requests. *Leasy*, 335 So. 3d at 557 (¶4). This Court reversed the dismissal, finding that the defendant "failed to prove actual prejudice and could only speculate as to the possibility"; however, the Mississippi Supreme Court granted certiorari and reversed our decision, affirming the circuit court's Rule 41(b) dismissal. *Id*. at 559-60 (¶¶11, 13), *rev'g Leasy v. SW Gaming LLC*, 364 So. 3d 706, 712 (¶22) (Miss. Ct. App. 2021). The supreme court summarized its reasoning as follows:

> Given the length of delay, prejudice is presumed under *Holder* and our precedent. Instead of presuming prejudice based on the length of delay as in *Holder* or by affording the trial court deference in its finding of actual prejudice, the Court of Appeals ignored the applicable abuse-of-discretion standard of review and reweighed the evidence, substituting its judgment for that of the trial court. As a result, the Court of Appeals' opinion directly conflicted with prior appellate decisions and must be reversed.

*Id.* at 560 (¶13).

¶42.    In this instance, the circuit court judge stated in his order granting the dismissal that the doctors employed at SCRMC at the time (almost four years ago) have faded memories. Even though the Tisdales argue that SCRMC does not present any evidence "to make a showing of actual faded memories," the circuit court did not abuse its discretion in determining that because of the time length, the amount of patients that have been seen in the interim, and the healthcare providers who have changed jobs, relocated, or retired, the memories of the witnesses have faded. Thus, even though SCRMC did not present evidence of actual prejudice, the circuit court did not abuse its discretion by finding that actual prejudice existed due to faded memories and, even more so, correctly finding that there was a clear delay; therefore, prejudice may be presumed.

¶43.    The presence of an aggravating factor is also not a requirement, but it may serve to "bolster" or strengthen the case for a dismissal. *Holder*, 54 So. 3d at 200 (¶31). The aggravating factors include (1) the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay; (2) the degree of actual prejudice to the defendant; and (3) whether the delay was the result of intentional conduct. *Id*.

21

¶44. As our supreme court has pointed out, "[t]his Court has emphasized the presence of delay or contumacious conduct drives the dismissal inquiry, not the presence of prejudice or aggravating factors." *Regan*, 234 So. 3d at 1246 (¶17). In short, the absence of an aggravating factor does not defeat dismissal under Rule 41(b). Here, the circuit court found a clear record of delay and that no lesser sanctions would suffice. As we discussed above, we find no abuse of discretion in the circuit court's Rule 41(b) dismissal based on these factors. Because the presence of an aggravating factor is not a requirement, we find that the lack of an explicit finding of an aggravating factor in this case does not constitute reversible error.

## CONCLUSION

¶45. The circuit court did not err by reviewing this motion to dismiss under Rule 41(b) instead of Rule 37. Further, the circuit court did not miscalculate the delay, and the court correctly found there was a clear delay by the Tisdales, with no activity occurring to advance the case to judgment in over two years. The circuit court correctly reviewed possible lesser sanctions and did not abuse its discretion by determining anything less than a dismissal of the case would be unjust. Therefore, we find no abuse of discretion by the circuit court and affirm the order of dismissal.

¶46. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., SMITH AND EMFINGER, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McCARTY, J.; McDONALD, J.,**

**JOINS IN PART. WEDDLE, J., NOT PARTICIPATING.**

**LAWRENCE, J., DISSENTING:**

¶47. I respectfully disagree with the majority's decision. The COVID-19 pandemic caused unforeseen delays and complications within the judicial system. I am proud of the courts of this state for remaining open and conducting business to the best of its ability commensurate with the safety of personnel and parties. However, to act as if the COVID-19 pandemic did not substantially affect lawyers and their law practice is akin to sticking our collective heads in the sand. This Court has previously recognized that "[w]hile the court system across Mississippi did remain open during the pandemic, . . . the pandemic certainly had a substantial effect on lawyers' ability to practice law." *Wren v. Zellers*, 390 So. 3d 1011, 1016 (¶13) (Miss. Ct. App. 2024).

¶48. The state supreme court entered multiple emergency orders concerning safety throughout the pandemic. On March 20, 2020, it was ordered that "[a] case involving an attorney or party who is ill or in a high-risk category shall be rescheduled." Emergency Administrative Order-5, No. 2020-AD-00001-SCT, at 4 (Miss. Mar. 20, 2020). In August 2021, the supreme court issued an order containing the following:

> Unfortunately, **circumstances have precipitously deteriorated, especially with respect to the Delta variant of COVID-19**. . . . [T]he Delta variant is much more contagious and spreading three times faster than other strains. As of August 2, 2021, there were 1,574 new COVID-19 confirmed infections in Mississippi. Two days later, on August 4, 2021, the number of new confirmed infections had more than doubled to 3,164. . . . COVID-19-related hospitalizations and ICU occupancy are rapidly rising to levels seen during the

23

worst days of the pandemic in Mississippi[.] . . . In exercising their discretionary powers, individual judges are strongly encouraged to refer to the guidance issued by the MSDH for preventing the spread of COVID-19 (e.g., recommendations on social distancing; personal-protective measures, including face coverings; and capacity limitations for gatherings).

Emergency Administrative Order-21, No. 2021-AD-00001-SCT, at 1-2 (Miss. Aug. 5, 2021)

(emphasis added) (footnotes omitted). Then, in December of the same year, the supreme

court issued an emergency order stating:

Unfortunately, **circumstances continue to deteriorate. In addition to the Delta variant of COVID-19, our State now faces the Omicron variant**, which accounts for more than 60% of the new reported cases, according to State Epidemiologist Dr. Paul Byers. . . . [I]ndividual judges have the discretion to control their own dockets. In exercising their discretionary powers, individual judges are strongly encouraged to refer to the guidance issued by the MSDH for preventing the spread of COVID-19 (e.g., recommendations on social distancing; personal-protective measures, including face coverings; and capacity limitations for gatherings).

Emergency Administrative Order-25, No. 2021-AD-00001, at 1-2 (Miss. Dec. 30, 2021)

(emphasis added).

¶49. In this case, the Tisdales' attorney was sixty-nine years old and genuinely concerned

for his health, making it necessary for him to notify his clients of his decision to no longer

represent them. His concerns were legitimate, as referenced by the supreme court issuing

emergency orders. People were unquestionably dying.[1] Society closed most doors for

---

[1] There were 385,676 deaths attributed to COVID-19 in the United States in 2020. Of those deaths, 91% had COVID-19 "listed as the underlying cause of death . . . . For the remaining deaths, COVID-19 was listed as a contributing cause of death." National Center for Health Statistics, *Provisional COVID-19 Mortality Surveillance* (data as of October 10, 2024), https://www.cdc.gov/nchs/nvss/vsrr/COVID19/index.htm. In 2021, the number of

24

different periods of time. The Tisdales' lawyer notified his clients on April 2, 2020, indicating that due to his "age and the current circumstances[,]" it was time for him to "retire from active litigation practice." The trial court signed the order to withdraw on August 28, 2020, and allowed the Tisdales forty-five days to find another attorney. The forty-five-day period allowed by the trial court ended in mid-October. In summary, at this point in time from March 2020 to mid-October 2020, approximately 7½ months, COVID-19 was recognized as a major societal health issue. The supreme court issued an emergency order on March 20, 2020, and the trial court allowed an attorney to withdraw from further representation due to health concerns from COVID-19. Yet, this seven-and-a-half-month period was still used against the Tisdales as proof of clear delay.

¶50. The Tisdales' new lawyers entered their appearances in the case on October 12, 2020, and October 16, 2020. South Central filed a motion to dismiss for failure to prosecute on August 5, 2021. The motion alleged a two-year window of time in which the Tisdales did not prosecute their case. That window was defined from the time South Central sent discovery requests on August 21, 2019, and the Tisdales answered on August 13, 2021. The trial court held:

> Upon review, the Court finds a clear record of delay by the Plaintiffs in this case. The medical care at the center of this dispute occurred in October of

deaths rose to 463,267, with 90% of them listing COVID-19 as the underlying cause. *Id.* In Mississippi alone, there were 4,466 deaths in 2020 and 5,082 deaths in 2021. National Center for Health Statistics, *COVID-19 Mortality by State* (data as of Feb. 15, 2023), https://www.cdc.gov/nchs/pressroom/sosmap/covid19_mortality_final/COVID19.htm.

2017. The Tisdales filed their Complaint against [South Central] on March 28, 2019, and South Central filed its Answer on July 18, 2019, and propounded its first set of discovery on August 21, 2019. As stated above, prior to filing their responses to discovery on August 13, 2021, and then responding to the Motion to Dismiss herein on August 16, 2021, the **[Tisdales] have not taken any substantive action in this cause for over two (2) years**, since filing their Complaint on March 28, 2019 . . . the [Tisdales] have not provided and the Court does not find a valid reason for the [Tisdales'] delay of ten (10) months in responding to discovery[.]

(Emphasis added).

¶51. Between April 2020 and March 2022, the COVID-19 pandemic ebbed and flowed. Some times were more dangerous than others. At least three different times—March 2020, August 2021, and December 2021—Chief Justice Randolph of the Mississippi Supreme Court recognized different outbreaks that produced deteriorating circumstances. Those orders, while ensuring "open courts," recognized the pandemic was causing serious concerns and problems in the judicial system. During those dangerous times, lawyers' lives and law practices suffered the array of effects like all other members of society. But the trial court's order merely stated that "COVID [wa]s not a sufficient justification for [the Tisdales'] current counsel to delay responding to [South Central]'s discovery for another ten (10) months."

¶52. During the ten-month delay stressed by the trial court, one of the emergency orders was issued by the Chief Justice of the Mississippi Supreme Court on August 5, 2021, as cited above. That order accounts exactly what we lived through during that time period. As we thought COVID-19 was diminishing, a new variant would arise. The emergency order

26

recognized the Delta variant was causing conditions to deteriorate. Lawyers were people living through these uncertainties like everyone else. Lawyers had more difficulties communicating with clients, getting records, and completing simple, routine legal tasks than before the pandemic. To be clear, I do not dispute the facts and dates in the majority's or the trial court's opinions.[2] However, I do take issue with the fact that the trial court failed to properly consider the effects of COVID-19 during those dates and the pandemic's effect on lawyers' everyday lives. There is certainly more to the equation of dismissing a complaint active during the COVID-19 pandemic than just stating the courthouse doors were "open."

¶53.    This Court will reverse a decision in a failure-to-prosecute case "only if it finds the trial court abused its discretion." *Leasy v. S.W. Gaming LLC*, 335 So. 3d 555, 557 (¶6) (Miss. 2022). "In a review for abuse of discretion, the appellate court will consider whether the decision was one of those several reasonable ones which could have been made." *Id.* at (¶7) (citing *Nunnery v. Nunnery*, 195 So. 3d 747, 752 (Miss. 2016)). "A finding of abuse of discretion absent a definite and firm identification of clear error violates time-honored standard-of-review principles." *Id. Leasy* went on to state:

> When we say that the trial court has discretion in a matter, we imply that there is a limited right to be wrong. At the very least the statement imports a view that there are at least two different decisions that the trial court could have made each of which on appeal must be affirmed. Indeed, if there are not at least two possible affirmable decisions, by definition the trial court is without discretion.

---

[2]  Nor do I condone delayed responses to discovery and non-compliance with the Mississippi Rules of Civil Procedure.

*Id.* at 558 (¶7) (quoting *Burkett v. Burkett*, 537 So. 2d 443, 446 (Miss. 1989)).

¶54.     Mississippi law favors a trial on the merits. As such, "[b]ecause the law favors a trial of the issues on the merits, a dismissal for lack of prosecution is employed reluctantly." *Holder v. Orange Grove Med. Specs. P.A.*, 54 So. 3d 192, 196 (¶17) (Miss. 2010) (quoting *Miss. Dep't of Hum. Servs. v. Guidry*, 830 So. 2d 628, 632 (¶13) (Miss. 2002)). "The mere fact that delay occurs in the prosecution of a case is not sufficient to warrant dismissal for want of prosecution." *Barry v. Reeves*, 47 So. 3d 689, 694 (¶14) (Miss. 2010). "It must be clear from the record that the delay was the result of the plaintiff's failure to prosecute the claim, rather than extrinsic factors beyond the control of the plaintiff." *Id.* Further, under the controlling decisions, "[t]here is no set time limit on the prosecution of an action once it has been filed." *Am. Tel. & Tel. Co. v. Days Inn of Winona,* 720 So. 2d 178, 180 (Miss. 1998) (citing *Watson v. Lillard*, 493 So. 2d 1277, 1279 (Miss. 1986)).

¶55.     The majority cites a recent case decided by this Court, *Wren v. Zellers*, 390 So. 3d 1011 (Miss. Ct. App. 2024). The case before us is factually different from *Wren*, even though the majority points out a couple of similarities. Moreover, I feel the distinguishable facts between the two cases are too material to merit the same result. First, in *Wren,* the attorney for the plaintiffs **never** filed a motion to withdraw from further representation due to health concerns caused by the pandemic, as the Tisdales' attorney did in this case. Second, the court in *Wren* never entered an order allowing the attorney to withdraw or allowing time for a new attorney to enter an appearance. Last—and most important—the court in *Wren*

28

actually considered the effects of the COVID-19 pandemic as part of the clear delay on the part of the plaintiff in prosecuting the cause. *Id.* at 1014 (¶5). Here, despite being argued by the Tisdales, the trial court did not consider whether the pandemic's effects contributed to the delay in prosecuting the cause. This remains true despite the Tisdales' attorney filing a motion to withdraw because of COVID-19, as well as the court's authorizing that withdrawal and granting additional time for a new attorney to make an appearance. As stated previously, the trial court merely stated that "COVID [wa]s not a sufficient justification for [the Tisdales'] current counsel to delay responding to [South Central]'s discovery for another ten (10) months." I think the trial court should have considered those factors surrounding the COVID-19 pandemic before exercising its discretion to forever bar a litigant from the courthouse doors and a trial on the merits.

¶56. In the end, this case came down to discovery not being answered until ten months after the Tisdales' new attorneys entered appearances. Yet those ten months occurred during a very complicated time of serious social health concerns, causing untold and very difficult considerations for lawyers practicing law. I think COVID-19 caused more problems within the practice of law than the trial court considered when applying discretion in dismissing the complaint. It was unfair to assign a two-year time period of "delay" to the Tisdales under the circumstances discussed in this dissent. The court's lack of consideration for the COVID-19 pandemic was an abuse of discretion, especially when it was alleged to have clearly caused part of the delay. To be clear, if the trial court's decision had reached the same conclusion

29

of dismissal after considering the pandemic and its effects on this case, I would agree with that fact-finding if supported by the record. I take issue with the lack of consideration. The record reflects the COVID-19 pandemic caused the original attorney to withdraw, not only from this case, but to retire from the practice of law. The court allowed that withdrawal and granted a period of time for the Tisdales to obtain the services of a new attorney. The new attorneys alleged, in part, that COVID-19 problems contributed to the delay in prosecuting this case. The orders from the Mississippi Supreme Court clearly proved COVID-19 was causing serious health concerns and complicating considerations in the practice of law. The failure to consider the COVID-19 pandemic's effects on this case before the ultimate sanction of dismissal was granted was, in my view, an abuse of discretion. Accordingly, I would reverse the dismissal of the complaint and remand this case to the active trial docket.

**McCARTY, J., JOINS THIS OPINION. McDONALD, J., JOINS THIS OPINION IN PART.**